**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIDGEVIEW HEALTH CARE CENTER LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons,** | ) | **No. 09-CV-05601** |
| **Plaintiff,** | ) | **Magistrate Judge Maria Valdez** |
| **v.** | ) | |
| **JERRY CLARK, d/b/a Affordable Digital Hearing,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment [Doc. No. 75]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Defendant's motion is denied.

## FACTS[1]

In June of 2006, Defendant Jerry Clark owned and operated Affordable Digital Hearing and was in the business of selling and repairing hearing aids. (LR

[1] Unless otherwise noted, the following material facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000). The following events are recounted in the light most favorable to the nonmovant, with relevant disputes noted. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 299–300 (7th Cir. 2011).

56.1(a)(3) ¶ 3, 5-6.) During this time, Caroline Abraham ("Abraham") d/b/a Business to Business Solutions ("B2B") was involved in the facsimile advertising business. (LR 56.1(a)(3) ¶ 53.) Abraham worked with a Romanian company named Macaw. (LR 56.1(a)(3) ¶¶ 54, 57-58.) One of Macaw's salespersons was Kevin Wilson ("Wilson"), Abraham's nephew. (56.1(a)(3) ¶¶ 55-56.) In response to telephone calls from Wilson, Clark hired B2B to send facsimile advertisements for Affordable Digital Hearing. (LR 56.1(b)(3)(c) ¶ 1.) Shortly after Clark decided to hire B2B, he received a facsimile from Wilson entitled "Tell Us What to Write in Your Free Ads." (LR 56.1(a)(3) ¶ 22.) Clark completed and returned the form to Wilson on June 8, 2006. (LR 56.1(a)(3) ¶ 23.) Within a few days, Wilson sent Clark a number of sample advertisements from which Clark could choose. (LR 56.1(a)(3) ¶ 24.) Clark chose one of the samples and made handwritten changes to the advertisement. (LR 56.1(a)(3) ¶ 25.)

On June 26, Clark provided B2B with more advertising information to be included on the advertisement: "Will Repair Any Brand Hearing Aid $139, no shipping, six-month warranty." (LR 56.1(b)(3)(c) ¶ 4.) One day later, Clark requested that the advertisement include the words "Toll Free" before Affordable Digital Hearing's phone number, and approved the advertisement. (LR 56.1(b)(3)(c) ¶ 6.) That same day, Clark faxed a check to B2B for $279.20. (LR 56.1(a)(3) ¶ 28.) Shortly thereafter, B2B constructed a records database for Defendant of 7,433 potential recipients. (LR 56.1(b)(3)(c) ¶ 17.) Then, according to Abraham, B2B sent 6,112 advertisements for Defendant. (LR 56.1(b)(3)(c) ¶ 18.)

B2B's computer records show 4,849 successful transmissions to 4,849 unique fax numbers on June 27 and June 28, 2006. (LR 56.1(b)(3)(c) ¶ 21.) The B2B documents list includes a single successful transmission to Plaintiff's fax number 708-594-7934. (LR 56.1(b)(3)(c) ¶ 25.) Marshall Mauer, Plaintiff's director, shareholder, secretary and treasurer, was not present when the facsimile at issue was received, and has no knowledge concerning the receipt of the facsimile. (LR 56.1(a)(3) ¶¶ 40, 42.) Martha Peck, the person Plaintiff identified as physically receiving the facsimile at issue, does not know if Plaintiff received the facsimile. (LR 56.1(a)(3) ¶¶ 46, 51.)

Plaintiff filed a class action seeking recovery on behalf of itself and a class of similarly-situated persons as a result of an unsolicited facsimile advertisement that Plaintiff allegedly received. Plaintiff seeks recovery for violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), for common law conversion, and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Defendant has moved for summary judgment.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court

must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

"In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003)); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th

Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Knapp v. County of Jefferson*, No. 06 CV 4028, 2007 WL 496396, at *1 (S.D. Ill. Feb. 13, 2007) (denying summary judgment where defendant's brief "contains no facts section and . . . fail[s] to point to the relevant portions of the record to establish the facts of this case").

In addition, "[c]onclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002). Similarly, affidavits or depositions based on speculation, rumor, or conjecture are not sufficient to defeat a properly supported motion for summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991). Finally, the Court is '"not required to draw every conceivable inference from the record."' *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

**B. <u>Analysis</u>**

Defendant maintains that summary judgment is proper in this case for two reasons: (1) Plaintiff cannot demonstrate that it ever received the Affordable Digital Hearing advertisement via facsimile and therefore lacks standing; and (2) even if Plaintiff is capable of demonstrating receipt, the advertisement was sent by an independent contractor whose activities were not controlled or directed by Defendant, and who exceeded its authority by allegedly transmitting facsimiles outside of a twenty-mile geographic area specified by Defendant.

1. Receipt

Clark first argues that Plaintiff lacks standing because Plaintiff cannot prove that it received the Affordable Digital Hearing advertisement via facsimile. In support of this position Defendant relies principally on *Riley & Ephriam Construction Co. v. United States*, 408 F.3d 1369 (Fed. Cir. 2005). In *Riley*, the issue before the court was whether the statute of limitations had run on a claim under the Contract Disputes Act (CDA). Under the CDA the key event for purposes of beginning the statute of limitations hinged on the date of receipt by the contractor of the decision concerning the claim. *Id.* at 1372. Under Federal Circuit law "receipt" meant actual physical receipt so that "[p]roof of message exit from a transmitting machine cannot serve as a proxy for proof of actual receipt of the sent message by a remote receiving terminal." *Id.* The court went on to say that the governing Board of Contract Appeal has not allowed the inference to be made that a fax transmission sheet would be deemed "receipt" in light of the usual routine practice of the contracting officer calling to confirm receipt. *Id.* at 1372-73. Thus, *Riley* is limited to its particular circumstances and has little application to this case.

Unlike the statute at issue in *Riley*, the plain language of the TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §

227(b)(1)(C) (emphasis added).[2] Persuasive authority within the Seventh Circuit holds that given the plain reading and statutory intent of the TCPA, a violation of the TCPA simply requires that an unsolicited fax be sent, not that Plaintiff must prove that it was received. *See Creative Montessori Learning Center v. Ashford Gear*, No. 09 C 3963, 2011 WL 3273078, at *2 (N.D. Ill. July 27, 2011); *Clearbrook v. Rooflifters*, No. 08 C 3276, 2010 WL 2635781, at *3 (N.D. Ill. June 28, 2010) (citing 47 U.S.C. § 227; *Saf-T-Gard Intern., Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008)); *Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802, 805 (N.D. Ill. 2008).

Although proof of receipt is not required, even if it was, Plaintiff has not only produced "proof of message exit," but has come forward with evidence such that a reasonable jury could infer that Plaintiff received the Defendant's advertisement via facsimile. The Seventh Circuit has held–in the context of deciding the timeliness of filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC)–that "fax confirmation is . . . strong evidence of receipt." *Laouini v. C.L.M. Freight Lines, Inc.*, 586 F.3d 473, 478 (7th Cir. 2009). Indeed, in the facsimile transmission context, it is commonly understood that "success" means

---

[2] Furthermore, the purpose of the TCPA is not limited to preventing wasteful printing of junk faxes. In determining that the TCPA's definition of "telephone facsimile machine" applies to any equipment that has the capacity to send or receive text or images, the FCC's rules and regulations implementing the act make clear that it extends to the interference and use of the target's telephone lines: "Facsimile messages sent . . . may also tie up lines . . . so that the recipients' requested faxes are not timely received." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14133-34 (2003).

that "the two fax machines have performed an electronic 'handshake' and that the data has been transmitted from one machine to the other." *Id.* (citing INFORMATION SECURITY MANAGEMENT HANDBOOK 277 (Harold F. Tipton & Micki Krause, eds., 6th ed. 2008)). *See also C.E. Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 140 (N.D. Ill. 2009) (determining that fax logs on B2B's computers were sufficiently reliable to show that 7,295 faxes were successfully sent).

Defendant argues that the facts of *Laoini* are technically distinguishable from the instant case. In *Laouini*, the individual who had the facsimile sent submitted an affidavit concerning the content of the document faxed, and the plaintiff provided a confirmation page showing transmission of a document to the recipient. *Laouini*, 586 F.3d at 474. Here, Plaintiff has not produced an affidavit from the individual who actually sent the facsimiles at issue; and Plaintiff has not produced a fax confirmation page from the sender. But, Plaintiff has produced undisputed evidence that B2B's computer records show that there were 4,849 successful facsimile transmissions to 4,849 unique fax numbers on June 27 and June 28, 2006, (LR 56.1(b)(3)(c) ¶ 21), and that the transmission to Plaintiff's fax number was successful (LR 56.1(b)(3)(c) ¶ 25). Furthermore, Abraham acknowledged in her deposition that "the ads in this case were sent on the [Defendant's] behalf," (LR 56.1(a) ¶ 8), which further supports the inference.

The aforementioned evidence of facsimile transmission to Plaintiff's fax number is sufficient for a reasonable factfinder to determine that Plaintiff's phone

line was "tied up" and that Plaintiff was injured in a manner that is actionable under the TCPA.

2. Vicarious Liability

Defendant argues that even if Plaintiff is capable of demonstrating receipt, the advertisement was allegedly sent by an independent contractor (B2B) whose activities were not controlled or directed by Defendant, and who exceeded its authority by allegedly transmitting facsimiles outside of a twenty-mile geographic area specified by Defendant.

Defendant contends that the TCPA is a statutory tort created by Congress which incorporates general tort-related vicarious liability rules. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). According to Defendant, since the undisputed facts establish that B2B was an independent contractor,[3] Defendant cannot be liable to Plaintiff for any TCPA damages associated with the transmission of the fax unless B2B was an agent of Defendant that acted within the scope of the authority granted by Defendant. Defendant maintains that B2B exceeded its authority, and therefore, Defendant cannot be held liable for B2B's actions. Defendant's argument is unconvincing.

First, Defendant's argument is likely moot. As *Meyer* itself reiterates, courts are to defer to an administering agency's reasonable interpretation of a statute. *Id.*

---

[3] Defendant does not include this fact in his Rule 56.1 Statement (and only asserts as much in a footnote in his Memorandum of Law in Support of his Motion for Summary Judgment) and so this Court does not treat this fact as undisputed.

at 287 (citing *Chevron U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984)). As Plaintiff notes, the FCC has concluded that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12407 (1995).

While general tort-related vicarious liability rules might apply absent rules and regulations implemented by an administering agency, in this case there exists an interpretation of the statute that clarifies the liability of entities on whose behalf unsolicited facsimiles are sent. Courts have relied upon the FCC's interpretation to conclude that defendants cannot escape liability simply by hiring an independent contractor to transmit unsolicited facsimiles on their behalf. *See Glen Ellyn Pharmacy v. Promius Pharma, L.L.C.*, No. 09 C 2116, 2009 WL 2973046, at *4-5 (N.D. Ill. Sept. 11, 2009); *See also Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 878 (Md. Ct. App. 2001); *Hooters v. Nicholson*, 537 S.E.2d 468 (Ga. Ct. App. 2000).

Defendant responds in its reply brief by arguing that the TCPA and its regulations must be read in conjunction with, and consistent with, 47 U.S.C. § 217. That section states:

> In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

47 U.S.C. § 217. Therefore, Defendant reasons, when read in conjunction with § 217, the FCC's interpretation of the TCPA cannot mean that a party who uses an agent to send advertisements in violation of the TCPA is liable for the actions of an agent that exceeded its authority.

Defendant has failed to make clear precisely how section 217 applies to him and/or the facts of this case. *See* 47 U.S.C. § 153(11) (defining carrier as "any person engaged as a common carrier for hire, in interstate or foreign communications by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter"). More important, however, section 217 is not at all inconsistent with the *Glen Ellyn Pharmacy* court's reading of the FCC's interpretation. Section 217 is, "in essence, a provision codifying the common law *respondeat superior* doctrine." *Hamman v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 960 (D. Minn. 2006). The section says nothing about what liability principles should apply in the situation where an independent contractor acts outside the scope of her employment. As such, the FCC's interpretation, as understood and applied in this District and others, continues to stand for the proposition that defendants cannot escape liability by hiring an independent contractor to transmit unsolicited facsimiles. However, even if Defendant is correct that, in some instances,[4] a party who uses an agent to send advertisements in

[4] It is worth nothing that in all of the cases Defendant relies upon to support the claim that such instances exist, the manner in which authority is exceeded is that the agent–absent any direction from the principal–initiated conduct that violated the TCPA, or otherwise would have violated the TCPA had the principal directed the agent to do so. In

violation of the TCPA may not be liable where the agent exceeded its authority, it remains the case that whether or not B2B exceeded its authority is a material fact in dispute.

3. Material Issues of Fact

Defendant frequently asserts that it is undisputed that Defendant only authorized B2B to transmit facsimile advertisements to 100 businesses within a twenty-mile radius of Terre Haute. (LR 56.1(a)(3) ¶ 16, 18-19, 29-33.) This is incorrect. Plaintiff has repeatedly denied Defendant's persistent claim and has offered contrary information into the record. (L.R. 56.1(b)(3)(B) ¶ 16, 18-19, 29-33.) Defendant maintains that the only evidence as to the scope of B2B's authorization is that within Defendant's Declaration. This is simply not the case. Evidence supporting the position that Defendant authorized B2B to send facsimiles to thousands of recipients beyond a twenty-mile radius of Terre Haute has been produced by Plaintiff.

Specifically, Plaintiff points to the "toll free" and "no shipping" language Defendant added to the advertisement. (LR 56.1(b)(3)(c) ¶¶ 4, 6, 19.) In response, Defendant argues that merely including such language does not necessarily mean that Defendant intended to reach a national audience. (L.R. 56.1(a) ¶ 19.) Even if

---

this case, Defendant himself directed B2B to send unsolicited advertisement facsimiles in violation of the TCPA. Unlike those cases, Defendant maintains that he should be shielded from liability because his agent sent facsimiles to people in region A *and B* after he only explicitly directed his agent to break the law by sending facsimiles to people in region A. As the nature and scope of the authority granted to B2B is a material fact in dispute, the Court need not concern itself with Defendant's argument.

the additions to the advertisement fail to prove that Defendant approved a more expansive geographic range, Plaintiff's evidence does raise a disputed issue of material fact.

Additionally, Plaintiff has produced a document from B2B's computer records that B2B claims was faxed to Defendant. The document includes the following statements: "As agreed, you pay only $238 for us sending the first 5,000 fax ads, $9.20 for an additional 1,000 ads, $20 for the required toll free 'Remove' number use, and $2 per 1,000 faxes sent ($12) for incoming 'Remove' calls. This is a total of $279.20." (LR 56.1(b)(3)(c) ¶ 9.) Defendant claims that he never received this document. (L.R. 56.1(a) ¶ 9.) Defendant also claims that there is no testimony from Abraham that the document was sent to Defendant. (*Id.*) This is inaccurate. Plaintiff offers evidence that B2B sent the document to Defendant in Plaintiff's 56.1 Statement, citing Abraham's deposition, where Abraham says that B2B sent the "pay letter" to Defendant. (LR 56.1(b)(3)(c) ¶ 9.)

It is undisputed that Defendant hired B2B to send unsolicited facsimile advertisements on Defendant's behalf, and Plaintiff has produced evidence demonstrating that B2B sent 6,112 advertisements for Defendant, 4,849 of which B2B's computer records show were transmitted successfully. (LR 56.1(b)(3)(c) ¶¶ 1, 21, 25.) Furthermore, it is undisputed that B2B never expanded the geographic range to which faxes were sent without the customer's permission. (LR 56.1(a)(3) ¶ 64). When this fact is paired with the undisputed fact that there are records of successful facsimile transmissions outside of a twenty-mile radius of Terre Haute, a

reasonable jury could find that Defendant did authorize B2B to send facsimiles outside of the 20-mile radius of Terre Haute. Presumably, contrary to its Rule 56.1 statement, Defendant actually claims that B2B did not follow his instructions with respect to geographic scope. (LR 56.1(a) ¶ 14.) But the fact remains that Plaintiff has provided evidence that B2B never expanded the geographic range without the customer's permission. (LR 56.1(b)(3)(c) ¶ 13.) Whether or not B2B exceeded its authority is a material fact in dispute that will be left to the factfinder for a determination.

**CONCLUSION**

For the reasons stated above, there is no requirement that Plaintiff prove that it received the facsimile at issue and even if there is such a requirement Plaintiff has demonstrated that there exist material questions of fact as to whether Plaintiff did received the facsimile. Further, material issues of fact exist on the question of whether B2B exceeded its authority. Therefore, the Court cannot, as a matter of law, determine that Defendant Clark is entitled to a grant of summary judgment. Defendant's Motion for Summary judgment [Doc. No. 74] is denied.

**SO ORDERED.**

**ENTERED:**

**DATE: September 30, 2011**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**