

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGEVIEW HEALTH CARE CENTER LTD., an Illinois corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) ) | No. 09 C 5601 |
| Plaintiff, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | |
| JERRY CLARK, d/b/a Affordable Digital Hearing, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion for class certification pursuant to Rule of the Federal Rules of Civil Procedure [Doc. No. 45]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion is granted.

## FACTS[1]

In June of 2006, Defendant Jerry Clark owned and operated Affordable Digital Hearing and was in the business of selling and repairing hearing aids. (LR 56.1(a)(3) ¶ 3, 5-6.) During this time, Caroline Abraham ("Abraham") d/b/a Business to Business Solutions ("B2B") was involved in the facsimile advertising business. (LR 56.1(a)(3) ¶ 53.) Abraham worked with a Romanian company named Macaw.

---

[1] The Court takes the following facts from the parties' Rule 56.1 Statements.

(LR 56.1(a)(3) ¶¶ 54, 57-58.) One of Macaw's salespersons was Kevin Wilson ("Wilson"), Abraham's nephew. (56.1(a)(3) ¶¶ 55-56.) In response to telephone calls from Wilson, Clark hired B2B to send facsimile advertisements for Affordable Digital Hearing. (LR 56.1(b)(3)(c) ¶ 1.) Shortly after Clark decided to hire B2B, he received a facsimile from Wilson entitled "Tell Us What to Write in Your Free Ads." (LR 56.1(a)(3) ¶ 22.) Clark completed and returned the form to Wilson on June 8, 2006. (LR 56.1(a)(3) ¶ 23.) Within a few days, Wilson sent Clark a number of sample advertisements from which Clark could choose. (LR 56.1(a)(3) ¶ 24.) Clark chose one of the samples and made handwritten changes to the advertisement. (LR 56.1(a)(3) ¶ 25.)

On June 26, Clark provided B2B with more advertising information to be included on the advertisement: "Will Repair Any Brand Hearing Aid $139, no shipping, six-month warranty." (LR 56.1(b)(3)(c) ¶ 4.) One day later, Clark requested that the advertisement include the words "Toll Free" before Affordable Digital Hearing's phone number, and approved the advertisement. (LR 56.1(b)(3)(c) ¶ 6.) That same day, Clark faxed a check to B2B for $279.20. (LR 56.1(a)(3) ¶ 28.) Shortly thereafter, B2B constructed a records database for Defendant of 7,433 potential recipients. (LR 56.1(b)(3)(c) ¶ 17.) Then, according to Abraham, B2B sent 6,112 advertisements for Defendant. (LR 56.1(b)(3)(c) ¶ 18.)

B2B's computer records show 4,849 successful transmissions to 4,849 unique fax numbers on June 27 and June 28, 2006. (LR 56.1(b)(3)(c) ¶ 21.) The B2B documents list includes a single successful transmission to Plaintiff's fax number

2

708-594-7934. (LR 56.1(b)(3)(c) ¶ 25.) Marshall Mauer, Plaintiff's director,

shareholder, secretary and treasurer, was not present when the facsimile at issue

was received, and has no knowledge concerning the receipt of the facsimile. (LR

56.1(a)(3) ¶¶ 40, 42.) Martha Peck, the person Plaintiff identified as physically

receiving the facsimile at issue, does not have personal knowledge concerning

Plaintiff's receipt of the facsimile. (LR 56.1(a)(3) ¶¶ 46, 51.)

Plaintiff brought suit against Defendant, alleging violations of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA" or "the Act"), and now moves to

certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).


## DISCUSSION

A party seeking class certification must demonstrate that it has met all of the

requirements of Rule 23(a) and one of the requirements of Rule 23(b). Under Rule

23(a), the party seeking certification must prove that (1) the class is so numerous

that joinder of all members is impracticable; (2) there are questions of law or fact

common to the proposed class; (3) the class representative's claims or defenses are

typical of the claims or defenses of the class; and (4) the representative will fairly

and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). In this

case, Plaintiff seeks certification under Rule 23(b)(3). In order to succeed, in

addition to satisfying the preceding elements, Plaintiff must show that "questions of

law or fact common to members of the class predominate over any questions

affecting individual members, and a class action is superior to other available

methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of demonstrating that certification is appropriate. *C.E. Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 138 (N.D. Ill. 2009) (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)). In assessing whether to certify a class, the Court "should make whatever factual and legal inquiries are required under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). Rule 23 vests the court with "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

## A.    **Plaintiff's Class Definition**

Defendant argues that the changes in Plaintiff's proposed class definition should preclude class certification.[2] Defendant's citations do not support its

---

[2] Plaintiff's class definition in its Second Amended Complaint:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes and (4) with whim Defendant did not have an established business relationship.

Plaintiff's class definition in its Motion for Class Certification:

> All persons who: (1) on June 27, 2006 or June 28, 2006; (2) were successfully sent a fax identifying "Affordable Digital Hearing" and "Hearing Aids" available in Terre

4

argument. In both *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) and *Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147 (N.D. Ill. 1982), the district court emphasized that a party's motion for class certification does not operate as a de facto amendment of a party's complaint. *Heastie*, 125 F.R.D. at 672 n.3; *Ridings*, 94 F.R.D. at 149 n.3. Nowhere does the court suggest that class certification is improper where the plaintiff has differing class definitions. In fact, in both cases the court certified the classes as originally defined and invited the plaintiffs to file appropriate motions to amend their complaints and class definitions. 125 F.R.D. at 680 n.10; 94 F.R.D. at 149 n.3. Class certification will be determined as originally defined and Plaintiff may move to alter or amend the class definition and amended complaint if they so choose.

Defendant also argues that Plaintiff's new class definition is indefinite. Class definitions must be definite enough that the class can be ascertained. *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2007). To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria. *Gomez v. Bd. Of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). Specifically, Defendant argues that the new class definition is improper for eight reasons: (1) the proposed definition of "fax" is vague and makes no reference to an advertisement; (2) the definition makes no reference to whether the document

---

Haute, IN or Plainfield, IL with a "Remove" number of (718) 360-0971; and (3) had not previously consented to receiving such advertisements.

was sent or received using fax, computer, or other device; (3) the definition is not limited to transmissions within a twenty-mile radius of Terre Haute, Indiana; (4) "successfully sent a fax" is undefined; (5) the definition does not require the recipient of the facsimile to be the owner of the facsimile machine; (6) the definition improperly contains a TCPA defense; (7) the definition includes matters outside the knowledge of a putative class member; and (8) the definition contains a typographical error.

Plaintiff has acknowledged the typographical error; the rest of Defendant's arguments are without merit. The allegedly vague language in question ("a fax identifying 'Affordable Digital Hearing. . .'") clearly references the advertisement. Defendant hired B2B to send via facsimile, and it is undisputed that the facsimile that contained the "Affordable Digital Hearing" language was an advertisement. (LR 56.1(b)(3)(c) ¶ 1.) Any hypothetical vagueness is irrelevant. As to Defendant's second argument, the FCC has explained that the TCPA's definition of "telephone facsimile machine" broadly applies to "any equipment that has the capacity to send or receive text or images." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14133 (2003). Therefore, the distinction Defendant requires is unnecessary.

Defendant's third argument is similarly rejected: Plaintiff's definition need not be limited to transmissions within a twenty-mile radius of Terre Haute, Indiana. As to Defendant's fourth argument, the language that references persons "who were successfully sent a fax" is acceptable considering the requirements of the

6

TCPA. As to Defendant's fifth argument, language regarding ownership of the receiving machines is not required by the Act. *G.M. Sign, Inc. v. Group C Communications, Inc.*, No. 08 C 4521, 2010 WL 744262, at *2 (N.D. Ill. Feb. 25, 2010) (citing *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *6 (N.D. Ill. Oct. 14, 2009)).

Defendant's sixth argument misinterprets the case upon which it relies. In *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2007 WL 4365359 (N.D. Ill. Dec. 13, 2007), the court held that the proposed class definition "improperly include[d] a component of a lack of defense" that would require the defendant "to mount a defense before a prima facie case of liability is established." The relevant portion of the class definition in that case read, "all persons who . . . were sent telephone facsimile messages . . . by or on behalf of Franklin Bank for whom *Franklin Bank cannot provide evidence* of prior express permission or invitation for the sending of such messages." *Id.* at *1 (emphasis added). In contrast, Plaintiff's definition reads, "all persons who . . . were successfully sent a fax . . . and *had not previously consented* to receiving such advertisements." (Pl. Mot. Class Cert. 1) (emphasis added). The key distinction is that Plaintiff's definition does not condition class membership upon evidence that Defendant must produce. The *G.M. Sign, Inc.* court understood this distinction and soon thereafter certified a class that included a phrase identical to Plaintiff's. *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950 (N.D. Ill. Aug, 20, 2008).

As to Defendant's seventh argument, the statutory language of the TCPA does not require receipt. Furthermore, a variety of courts in this District have certified classes where class definitions employ the term "sent" as opposed to "received." *See, e.g., Group C Comm's*, 2010 WL 744262, at \*6; *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008).

**B.    Plaintiff's Counsel's Alleged Improper Use of Evidence**

Defendant argues that since Plaintiff's Counsel used data from a hard drive (that contained B2B's archived computer files) for the instant case after promising Abraham that he would limit his use of the evidence to four other cases, Plaintiff should be estopped from utilizing any data in this lawsuit that its counsel obtained from the hard drive.

The issue of whether B2B's hard drive data is confidential and thus protected from disclosure and use has been previously adjudicated by Judge Kennelly. Defendant relies upon Judge Kennelly's comment in the case of *C.E. Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07 C 5456, 2010 WL 2365162, at \*19-20 (N.D. Ill. June 11, 2010), where the judge expressed that he was "troubled" by the conduct of plaintiff's counsel's (also one of the Plaintiff's counsel in the instant case) use of B2B's data in other cases. However, Defendant fails to identify for this Court that Judge Kennelly subsequently was no longer "troubled" because he specifically ruled that none of B2B's data was protectable or confidential in nature. *C.E. Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07 C 5456, 2010 WL 3327876, at \*3 (N.D. Ill.

Aug. 23, 2010). As a result, Judge Kennelly found that there was "no basis to justify disqualification of class counsel or decertification of the class on the grounds cited by [defendant]." *Id.* at 8. Because the data is not confidential, there is no bar to its use in this litigation and Plaintiff will not be estopped from using data from the hard drive in this lawsuit.

C.   **Numerosity**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Plaintiffs are not required to allege the exact number or identity of the class members for certification purposes, and courts may make common sense assumptions in determining numerosity. *Hinman*, 545 F. Supp. 2d at 806.

Citing to his expert's report, Defendant argues that it is extremely difficult to verify the true delivery of any data to a receiving fax machine without the "tracelog" file, which is absent from the B2B hard drive. Nevertheless, B2B's computer records show that there were 4,849 successful transmissions of Defendant's advertisement to 4,849 unique fax numbers. Defendant's speculation about false positives is simply that. Several courts in this District have held that the kinds of fax records that Plaintiff has produced in this case are reliable. *See C.E. Design Ltd.*, 259 F.R.D. at 139; *Hinman*, 545 F. Supp. 2d at 806. Plaintiff has produced enough evidence of the size of the proposed class to satisfy Rule 23(a)'s numerosity requirement.

**D.    Commonality & Typicality**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Commonality is usually satisfied by establishing a "common nucleus of operative facts." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The requirement is met in cases where "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Keele*, 149 F.3d at 594. In cases similar to this one, courts have certified classes where the plaintiff has produced evidence of the ordering of a fax broadcast to several thousand fax numbers. *C.E. Design Ltd.*, 259 F.R.D. at 141; *Hinman*, 545 F. Supp. 2d at 806-07. The instant case involves common factual questions about Defendant's facsimile campaign and common legal questions under the TCPA.

Rule 23 also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A representative's claims are "typical if it arises from the same event or practice or course of conduct that gives rise the claims of the other class members and his or her claims are based on the same legal theory." *Id.*

10

"For an assault on the class representative to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining the plaintiff's credibility that a fact-finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *C.E. Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)). Defendant's assault emphasizes that Plaintiff is not a proper class representative for two reasons: (1) Plaintiff lacks proof of receipt; and (2) Defendant has a defense unique to Plaintiff's claim—namely, that B2B was not authorized to send a facsimile to Plaintiff (or anyone outside of a twenty-mile radius of Terre Haute, Indiana). Neither reason is compelling.

First, Plaintiff does not lack any and all proof of receipt; instead, Plaintiff merely lacks particular kinds of proof concerning receipt. In this case, the same evidence concerning Defendant's advertising campaign applies to Plaintiff's claim and the claims of every other class member. Plaintiff's experts have analyzed the fax logs obtained from B2B and have testified that Plaintiff received one of Defendant's faxes. Furthermore—as is detailed in this Court's Memorandum Opinion and Order Denying Defendant's Motion for Summary Judgment—receipt of the offending facsimile is not an element of the TCPA. *See also Hinman*, 596 F. Supp. 2d at 1158-59 (explaining that the statutory scheme of the TCPA focuses on the sending of unsolicited facsimiles and makes no reference at all to receipt or printing). Even absent actual receipt of the offending facsimile, Plaintiff and the

11

other class members suffered injuries cognizable under the TCPA. *In re Rules and Regulations*, 18 F.C.C.R. at 14133-34.

Second, whether B2B was authorized to send a fax to Plaintiff – and others outside of a twenty-mile radius of Terre Haute, Indiana – can be resolved on a class-wide basis at trial. Here, Plaintiff's claims and the other proposed class members' claims all arise from Defendant's facsimile campaign of June 27 and 28, and each member's claim is based on the same legal theory as Plaintiff's.

## E.    Adequacy

To qualify as a class representative, one must "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The interests of the representative parties "must coincide with those of the rest of the class, and class counsel must be prepared and able to prosecute the action." *C.E. Design Ltd.*, 259 F.R.D. at 142 (citing *Retired Police Ass'n*, 7 F.3d at 598 and *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007)).

Plaintiff and the other class members seek statutory damages under the TCPA; therefore, Plaintiff's pecuniary interests are aligned with those of the class and there seems to be no potential for conflicting interests. Plaintiff seems to understand its obligations and the nature of its claims. Plaintiff is involved in the litigation, is interested in representing the class, and has pursued its claim diligently.

12

Defendant's arguments as to Plaintiff's adequacy are the same as those Defendant raises in terms of the typicality of Plaintiff's claims. Defendant's arguments are unavailing for the reasons set forth in Section D, *supra*.

Defendant has no objections to the competency of Plaintiff's Counsel, but argues that the circumstances concerning Counsel's procurement of the B2B hard drive and its "apparent use to manufacture this case" suggest that Plaintiff and the class may be better served through representation by other counsel. For the reasons set forth in Section B, *supra*, Defendant's argument is not well taken.

**F.**     **Predominance & Superiority**

Rule 23(b)(3) requires the Court to find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, common legal issues predominate as the class members' claims arise under the same federal statute; common fact issues predominate because the members' claims focus on Defendant's June 27 and 28, 2006 facsimile advertising campaign. Additionally, the class action method is superior in this case because resolution of the issues on a classwide basis is preferable to the filing of thousands of claims based on the same conduct, and far more likely to take place since the potential recovery is too slight to support individual suits.

Defendant argues that individual inquiry is necessary to determine actual receipt of Defendant's facsimiles. Defendant is mistaken. Records of successful

transmission are sufficient to support class certification. *See, e.g., C.E. Design Ltd.,* 259 F.R.D. at 142. Likewise, hypothetical false positives cannot defeat class claims. *Hinman,* 596 F. Supp. 2d at 1159. Furthermore, "actual receipt" is not required under the TCPA. *See* Section D, *supra.*

Defendant also maintains that Plaintiff has failed to establish "manageability," one of the factors pertinent to a finding of superiority. Defendant's main concerns are the identification and subsequent notification of the facsimile recipients. Plaintiff has the fax numbers of all of the facsimile recipients; such information is "both precise and objective." *C.E. Design Ltd.,* 259 F.R.D. at 141. The fax numbers "on the logs 'present enough information to enable class counsel to locate [the class members].'" *Id.* (quoting *G.M. Sign, Inc.,* 2008 WL 3889950, at *3). Identification and notification should be relatively simple and straightforward.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Class Certification [Doc. No. 45]. The Court certifies the following class under Rule 23(b)(3): all persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes and (4) with whom Defendant did not have an established business relationship.

The Court sets the case for a status hearing on October 13, 2011 at 9:30 a.m. The parties are directed to meet and confer prior to that date so they can propose to the Court a mechanism and timetable for identifying the persons to whom notice will be sent. They are to file a joint status report by no later than October 11, 2011 identifying their proposals.

SO ORDERED.                                    ENTERED:


DATE: <u>September 30, 2011</u>                    _____
                                               HON. MARIA VALDEZ
                                               United States Magistrate Judge