## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRIDGEVIEW HEALTH CARE CENTER LTD.**, an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | **No. 09 C 5601** |
| | ) | **Magistrate Judge** |
| **Plaintiff,** | ) | **Maria Valdez** |
| | ) | |
| v. | ) | |
| | ) | |
| **JERRY CLARK, d/b/a Affordable Digital Hearing,** | ) ) ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment [Doc. No. 103]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## FACTS[1]

In June of 2006, Defendant Jerry Clark owned and operated Affordable Digital Hearing and was in the business of selling and repairing hearing aids. (LR

---

[1] Unless otherwise noted, the following material facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000). The following events are recounted in the light most favorable to the nonmovant, with relevant disputes noted. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 299-300 (7th Cir. 2011).

56.1(b)(3) ¶¶ 1-2.) During this time, Caroline Abraham ("Abraham") d/b/a Business to Business Solutions ("B2B") was involved in the facsimile advertising business. (LR 56.1(b)(3) ¶ 54.) Abraham worked with a Romanian company named Macaw. (LR 56.1(b)(3) ¶ 55.) One of Macaw's salespersons called himself Kevin Wilson ("Wilson")[2] and was Abraham's nephew. (LR 56.1(b)(3) ¶ 56.) In response to telephone calls from Wilson, Clark hired B2B to send facsimile advertisements for Affordable Digital Hearing. (LR 56.1(a)(3) ¶ 6.) Shortly after Clark decided to hire B2B, he received a facsimile from Wilson entitled "Tell Us What to Write in Your Free Ads." (LR 56.1(b)(3) ¶ 20.) Clark completed and returned the form to Wilson on June 8, 2006. (LR 56.1(a)(3) ¶¶ 7-8.) Within a few days, Wilson sent Clark a number of sample advertisements from which Clark could choose. (LR 56.1(b)(3) ¶ 22.) Clark chose one of the samples and made handwritten changes to the advertisement. (LR 56.1(b)(3) ¶ 23.)

On June 26, Clark provided B2B with more advertising information to be included on the advertisement: "Will Repair Any Brand Hearing Aid $139, no shipping, six-month warranty." (LR 56.1(a)(3) ¶ 10.) One day later, Clark requested that the advertisement include the words "Toll Free" before Affordable Digital Hearing's phone number, and approved the advertisement. (LR 56.1(a)(3) ¶ 12.) That same day, Clark faxed a check to B2B for $279.20. (LR 56.1(a)(3) ¶ 18.) Shortly thereafter, B2B constructed a records database for Defendant of 7,433 potential

---

[2] "Kevin Wilson" is an alias, according to Abraham, and his real name is Conor Melville. (LR 56.1(b)(3) ¶ 56.)

recipients. (LR 56.1(a)(3) ¶ 24.) Then, according to Abraham, B2B sent 6,112 advertisements for Defendant. (LR 56.1(a)(3) ¶ 18.)

B2B's computer records show 4,849 successful transmissions to 4,849 unique fax numbers on June 27 and June 28, 2006. (LR 56.1(a)(3) ¶ 29.) The records indicate that the documents transmitted on those dates had the file names "fax 2" "2006.06.27-Clark_0" and "fax 2" "2006.06.28-Clark_0," respectively. (LR 56.1(a)(3) ¶ 30.) The B2B list includes a single successful transmission to Plaintiff's fax number, 708-594-7934. (LR 56.1(a)(3) ¶ 33.) Marshall Mauer, Plaintiff's director, shareholder, secretary and treasurer, was not present when the facsimile at issue was received, and has no knowledge concerning the receipt of the facsimile. (LR 56.1(b)(3) ¶¶ 42, 44-48.) Martha Peck, the person Plaintiff identified as physically receiving the facsimile at issue, does not know if Plaintiff received the facsimile. (LR 56.1(b)(3) ¶¶ 50, 53.)

Plaintiff filed a class action seeking recovery on behalf of itself and a class of similarly-situated persons as a result of an unsolicited facsimile advertisement that Plaintiff allegedly received. Plaintiff seeks recovery for violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), for common law conversion, and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Plaintiff has moved for summary judgment.

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

"In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003)); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Knapp v. County of Jefferson*, No. 06 C 4028, 2007 WL 496396, at *1 (S.D. Ill. Feb. 13, 2007) (denying summary judgment where defendant's brief "contains no facts section and . . . fail[s] to point to the relevant portions of the record to establish the facts of this case").

In addition, "[c]onclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002). Similarly, affidavits or depositions based on speculation, rumor, or conjecture are not sufficient to defeat a properly supported motion for summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991). Finally, the Court is "'not required to draw every conceivable inference from the record.'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

## B. <u>Analysis</u>

To prevail on a TCPA claim, the plaintiff must show that the defendant used a telephone facsimile machine, computer, or other device to send an unsolicited

commercial advertisement without the recipient's prior express permission or invitation. 47 U.S.C. § 227(a)-(b). Plaintiff maintains that it has made the required showing for all 4,849 alleged recipients of the facsimiles in question, and that Defendant's contrary facts are indefinite allegations or self-serving affidavits that do not create a triable issue of fact. Defendants contend that genuine issues of fact remain in four main areas: (1) whether the facsimiles were received, (2) the contents of the facsimile in question, (3) the vicarious liability of Defendant for facsimiles sent by B2B on Defendant's behalf, and (4) whether Defendant "willfully or knowingly" violated the TCPA, and if so, whether treble damages are warranted.

## 1.    Receipt

As the Court stated in a previous order in this case, "[p]ersuasive authority within the Seventh Circuit holds that given the plain reading and statutory intent of the TCPA, a violation of the TCPA simply requires that an unsolicited fax be sent, not that Plaintiff must prove that it was received." *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4585028, at *3 (N.D. Ill. Sept. 30, 2011) (citations omitted). Defendant's response to this motion raises the same arguments as in the earlier summary judgment motion, and they remain unavailing.[3] In

---

[3] Defendant argues that Plaintiff must prove an injury-in-fact to have Article III standing, and that this injury-in-fact can only arise if Plaintiff has received the facsimile, noting that the Federal Circuit interpreted the Contract Disputes Act (CDA) to require proof of actual physical receipt of the communication in question. *Riley v. Ephriam Construction*, 408 F.3d 1369 (Fed. Cir. 2005). But Defendant's reliance on *Riley* is misplaced. Under the CDA, the date of facsimile receipt triggers the statute of limitations, 41 U.S.C. § 609(a)(1), (3); the TCPA contains no such triggering event, and thus the CDA analogy and *Riley* are inapposite.

enacting the TCPA, Congress chose to make evidence of *transmission* of the facsimile sufficient for Article III standing by the plain language of the statute. 47 U.S.C. § 227(b)(1)(C) (prohibiting the use of "any telephone facsimile machine, computer or other device to *send*" an unsolicited advertisement) (emphasis added).[4] Therefore, the question of whether Plaintiff actually received the facsimile is irrelevant to liability under the TCPA.

### 2. Content of the Facsimile

Defendant argues that the absence of either a copy of the received facsimile or an electronically stored copy of the transmitted facsimile means that a genuine issue of material fact remains with respect to the precise content of the transmissions listed in the B2B log. Defendant claims that a jury could find that the transmissions contained something other than the ad for Defendant's hearing aid repair business.

Plaintiff has not produced a copy of the advertisement that had been received directly as a facsimile, but nevertheless maintains that the evidence from the transmission log and the expert's analysis of the hard drive and records is sufficient that no reasonable jury could find that the content of the facsimile was anything other than Defendant's advertisement. Plaintiff is correct. Plaintiff has shown that

---

[4] Furthermore, the attempt to transmit an unsolicited facsimile can be injurious either by tying up the recipient's phone or fax line or, for repeated attempts, by prompting a potential recipient to turn off the fax machine altogether when it would otherwise remain on. *See Bridgeview*, 2011 WL 4585028, at *4. Congress chose to provide a remedy for those injuries by making the attempt to send an unsolicited facsimile actionable under the TCPA. *Id*.

B2B's hard drive contained the ad in question (LR 56.1(a)(3) ¶ 46); that it matched the image of the ad found on Abraham's B2B computer (LR 56.1(a)(3) ¶ 47); that B2B's records indicate successful transmissions to 4,849 fax numbers (LR 56.1(a)(3) ¶ 29); and that these numbers are matched in the transmission log to files indicating Defendant Clark's account, namely "fax 2" "2006.06.27-Clark_0" or "fax 2" "2006.06.28-Clark_0." (LR 56.1(a)(3) ¶ 30). Defendant nevertheless points out that the HylaFAX program, which B2B used to transmit the facsimiles, creates a separate docQ directory that saves an image of the file sent with each transmission. (LR 56.1(b)(3) ¶ 75.) In this case, Plaintiff's expert did not state whether he found any docQ directories on the B2B hard drive. (LR 56.1(b)(3) ¶ 76.) Indeed, he found scripts on the B2B hard drive that deleted the docQ directories, (LR 56.1(b)(3) ¶ 77), suggesting that the image files of each transmission no longer exist.

The absence of the image files for the facsimile in question does not raise a genuine issue of material fact. Importantly, the absence of docQ image files appears to be due to B2B's own script, which deleted them off of the hard drive. (*See* LR 56.1(b)(3) ¶ 77.) Thus the only missing piece of evidence in the electronic chain appears to be missing because of Defendant's agent's own computer program. Allowing a sender of unsolicited commercial fax transmissions to avoid TCPA liability when the sender herself deletes the images would create a perverse incentive and could undermine enforcement of the TCPA. Defendant, meanwhile, has introduced no evidence to indicate what else might have been transmitted in lieu of the advertisement in question. This sort of hypothetical discussion is not

8

enough to stave off summary judgment. *See Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1158-59 (N.D. Ill. 2009) (defendant "would have to raise more than 'some metaphysical doubt' as to whether the faxes were sent") (*quoting Matsushita*, 475 U.S. at 586).

### 3. Vicarious Liability

FCC regulations state that under the TCPA, "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements. . . ." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995). Thus, the TCPA creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act. *Id.*; *see Glen Ellyn Pharmacy v. Promius Pharma, LLC*, No. 09 C 2116, 2009 WL 2973046, at *3 (N.D. Ill. Sept. 11, 2009). This Court and others have relied on the FCC's interpretation "to conclude that defendants cannot escape liability simply by hiring an independent contractor" to send unsolicited facsimiles on their behalf. *Bridgeview*, 2011 WL 4585028, at *4; *see Glen Ellyn Pharmacy*, 2009 WL 2973046. Here, it is undisputed that Defendant hired B2B to send *some* advertisements: he admits that he authorized B2B to send approximately 100 facsimiles on his behalf. (LR 56.1(b)(3) ¶ 16.) While Defendant argues that B2B was an independent contractor, this does not absolve Defendant of liability for at least some of the unsolicited facsimiles at issue.

9

The additional question here is whether Defendant's authorization of B2B to send *any* facsimiles on his behalf creates liability under the TCPA for *all* of the facsimiles that B2B ultimately sent. Plaintiff argues that once an agency relationship is established then the TCPA confers strict liability for all of the facsimiles ultimately sent. Defendant maintains that the TCPA does not abrogate the traditional rules of agency, and therefore the TCPA makes an entity liable only for facsimiles sent on the entity's behalf that were within the agent's authority. The Court finds Defendant's argument persuasive.

      i.    **An Agency Relationship Requires Authorization by the Principal, and Thereby Limits Vicarious Liability under the TCPA**

The plain language of the TCPA assigns liability to "any person" who sends a facsimile. 47 U.S.C. § 227(b)(1). While the statute is silent on the issue of vicarious liability, when Congress creates a tort action, "it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *Thomas v. Taco Bell Corp.*, No. 09 C 1097, 2012 WL 3047351, at *4 (C.D. Cal. June 25, 2012). The FCC has therefore ruled that the TCPA incorporates vicarious liability, a reasonable interpretation to which this Court has deferred. *See Bridgeview*, 2011 WL 4585028, at *4; *Glen Ellyn Pharmacy*, 2009 WL 2973046, at *4. Furthermore, nothing in the language of § 227(b) indicates that traditional

notions of agency law are not applicable.[5] This Court finds that Congress intended liability for unsolicited commercial facsimiles under § 227(b) of the TCPA to incorporate agency law principles. *See Meyer*, 537 U.S. at 285.

Since vicarious liability applies, the limitations on vicarious liability that arise out of agency relationships also apply. *See Glen Ellyn Pharmacy*, 2009 WL 2973046, at *7-8. For a principal-agent relationship to exist, the principal must have the right to control the manner and method of work carried out by the agent, and the agent must be able to affect the legal relationships of the principal. *Glen Ellyn Pharmacy*, 2009 WL 2973046, at *7-8 (*quoting Oliveira-Brooks v. Re/Max Int'l, Inc.*, 865 N.E.2d 252, 258 (2007)). The principal can provide authority to the agent in advance or can ratify an unauthorized act after the fact, which is tantamount to an original authorization. *Id.* Either type of authorization makes the principal liable for the acts of the agent. *See id.* The party that seeks to charge the alleged principal must prove both the existence of an agency relationship and the scope of authority. *Oliveira-Brooks*, 865 N.E.2d at 258. Therefore, defendants may

---

[5] Given that a different section of the TCPA regarding home telephone subscriber rights contains explicit language of vicarious liability, *see* 47 U.S.C. § 227(c)(5) (a person who receives more than one phone call "by or on behalf of the same entity" in one year may bring an action against that entity), the argument that a section of the TCPA with no mention of vicarious liability should nonetheless be interpreted to override traditional agency law principles is particularly unpersuasive. *See Mey v. Pinnacle Sec.*, LLC, No. 5:11CV 47, 2012 WL 4009718, at *4 (N.D.W. Va. Sept. 12, 2012); Thomas, 2012 WL 3047351, at *4 (fact that § 227(b)(1) does not use the word "behalf" shows that "Congress knew how to assign vicarious liability automatically for TCPA cases and did not do so for the subsection at issue").

11

be liable under § 227(b) of the TCPA for the acts of a third party, but only for actions within the scope of authority granted to that third party.

### ii.    The Scope of B2B's Authorization is a Disputed Issue of Material Fact

In denying Defendant's prior motion for summary judgment, this Court found that the scope of Defendant's authorization to B2B to send facsimile advertisements was a disputed issue of material fact. *Bridgeview,* 2011 WL 4585028, at *5. It remains so. Defendant has presented sufficient evidence to defeat the instant motion for summary judgment. Defendant admits that he authorized 100 facsimiles to be sent out, but he denies authorizing any advertisements outside of the twenty mile radius of Terra Haute. (LR 56.1(b)(3) ¶¶ 14-16, 29-31.)

Plaintiff argues that the only evidence for a *lack* of authorization is a self-serving affidavit by Defendant. But this is not the case. Defendant has produced evidence to show that he did not do business outside the twenty mile radius of Terra Haute, let alone 200 miles away. (LR 56.1(b)(3) ¶¶ 32-35.) Defendant also declared that the business has had a toll-free telephone number since 2001, not to garner business beyond the Terra Haute area, but for a separate purpose: to avoid long distance charges between Defendant's home in nearby Illinois and the stores in Indiana. (LR 56.1(b)(3) ¶¶ 8-9.) Both of these undisputed facts tend to demonstrate that Defendant would have been unlikely to authorize a facsimile advertising campaign far beyond the usual scope of his business, casting doubt on Plaintiff's argument that the addition of "toll free" and "no shipping" language indicates an

12

intent to distribute the advertisement more broadly. Plaintiff further points to Abraham's testimony that B2B never expanded the geographic range to which facsimiles were sent without the customer's permission. (LR 56.1(a)(3) ¶¶ 20-21.) And Abraham also testified that while she had no recollection of any geographic limits set by Defendant, local businesses typically wanted local advertising campaigns.(LR 56.1(b)(3) ¶ 59.) Based on these facts, a reasonable jury could find that Defendant did not authorize B2B to send facsimiles beyond the twenty mile radius of Terra Haute.

The parties also dispute whether Defendant received the so-called "pay letter," or any other written confirmation of B2B's plan to send 6,000 facsimiles on his behalf, which could constitute ratification of the transmissions and would operate to make the principal (Defendant) vicariously liable for the agent's (B2B) actions even if he had not given the initial authorization. The parties even dispute which document is repeatedly referred to as the "pay letter." It is undisputed, however, that Plaintiff produced a document from B2B's computer containing a confirmation of the price for 6,000 transmissions of the ad and instructions for payment, under the heading "Starting Your Campaign." (LR 56.1(a)(3) ¶ 16.) Abraham, in her deposition, stated that she sent these instructions to Defendant in a June 26, 2006 facsimile. (LR 56.1(a)(3), Ex. Ap.168-69). *See also Bridgeview*, 2011 WL 4585028, at *6. And, according to her deposition testimony, Abraham *did*

explicitly state that she sent the pay letter. [Doc. No. 90, Ex. 1, Abraham Dep 126:23-127:8.][6] Plaintiff has therefore produced evidence that the letter was sent.

However, Defendant claims that he never received the pay letter and thus never authorized the transmission of 6,000 facsimiles. (LR 56.1(b)(3) ¶ 27.) While ratification of an agent's actions "need not be express; it may be inferred from surrounding circumstances," *see Glen Ellyn Pharmacy*, at \*7 (*quoting Kulchawik v. Durabla Mfg. Co.*, 864 N.E.2d 744, 750 (Ill. App. Ct. 2007)), the Court must take the facts in the light most favorable to Defendant, and finds that an inference of ratification is not warranted. Given the disparate accounts and Plaintiff's own confusion over the precise statements in Abraham's testimony, the assessment of the veracity of both Abraham's and Defendant's declarations is best left to the finder of fact. However, summary judgment is granted with respect to the facsimiles sent within the twenty mile radius of Terra Haute.[7]

---

[6] Defendant points out that Abraham spoke of two documents in her deposition: the pay letter, coded as B2B thirteen, and a document that concluded, "After you send us the okay your advertising will reach thousands within a few short hours," coded as B2B seven. (Abraham Dep. 168:22-170:5.) In the passage cited by Plaintiff, Abraham was first asked about B2B seven, and stated that she sent it to Defendant via facsimile. (LR 56.1(a)(3) ¶ 16, *citing* Abraham Dep. 169:2-25.) In that context, she was next asked about B2B thirteen, the "pay letter," and described it but was never explicitly asked whether she sent it to Defendant. (Abraham Dep. 169:22-170:5.)

[7] Defendant admits to authorizing "approximately 100 local businesses located within a 20-mile radius of Terra Haute." (LR 56.1(b)(3) ¶ 17.) Neither Plaintiff nor Defendant has produced evidence of precisely how many businesses on the B2B transmission list were located within twenty miles of Terra Haute.

### 4. "Willfully or Knowingly"

The TCPA provides for recovery of either actual damages or $500 per violation of subsection 227(b), but allows a court "in its discretion" to increase the award up to a maximum of treble damages if the defendant "willfully or knowingly violated" the statute. 47 U.S.C. § 227(b)(3). "Willfully" and "knowingly" are not defined in the TCPA. Defendant argues that the Court should adopt the heightened standard from *Texas v. American Blastfax, Inc.*, which required that the defendant "have reason to know, or should have known, that his conduct would violate the statute." 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) (finding that defendants knew their conduct was prohibited by the TCPA but continued it anyway); *see also Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012) (finding that defendants knew of TCPA requirements "months, if not years, before" the communications in question). The Court declines, noting that the few cited cases that adopt such a standard have still found liability under the TCPA, and thus it appears that no court has interpreted this provision as requiring a "reason to know" and then found for the defendant. *See id.*; *American Blastfax*, 164 F.Supp.2d at 899.

Instead, the Court adopts the more common interpretation that "willfully" or "knowingly" simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute. *See Sengenberger v. Credit Control Services, Inc.*, No. 09 C 2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010), *adhered to on reconsideration*, No.

15

09 C 2796, 2010 WL 6373008 (N.D. Ill. June 17, 2010). The Communications Act of 1943, which contains the TCPA, defines acting "willfully" as a voluntary act, but does not require knowledge that the act violates the statute. *See id.* (citations omitted). The plain language of 47 U.S.C. § 227(b) makes the sender of an unauthorized commercial facsimile strictly liable, so interpreting "willfully" as requiring a volitional act does not render the treble damages provision redundant with simple liabiilty under the TCPA.[8] Thus, a plaintiff "need not prove that defendant had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA." *Stewart v. Regent Asset Mgmt. Solutions*, No. 10 C 2552, 2011 WL 1766018, at *2 (N.D. Ga. May 4, 2011) (*citing Charvat v. Ryan*, 2007-Ohio-6833, 879 N.E.2d 765, 770). In this case, Defendant has admitted that he hired B2B to send facsimiles on his behalf containing his commercial advertisement. (LR 56.1(b)(3) ¶ 16.) This is sufficient to make his violation "willful" within the meaning of the statute. *See Sengenberger*, 2010 WL 1791270, at *6.

A Court may treble the damage for a willful violation of the statute. 47 U.S.C. § 227(b)(3)(C). However, in this case the Court determines that no enhanced damages are appropriate. Defendant is a small business with the normal desire to increase its business. Defendant chose to do this under the tried-and-true method of

---

[8] Presumably, an accidental transmission or a transmission that the sender mistakenly believed to be authorized could violate the TCPA without being "willful." *See Fillichio v. M.R.S. Associates, Inc.*, No. 09 C 61629, 2010 WL 4261442, at  (S.D. Fla. Oct. 19, 2010).

advertisement. Unfortunately, Defendant chose an aggressive method of advertisement that violated the law. Defendant admitted to hiring a company to send unsolicited facsimile messages to his neighbors and fellow citizens in Terra Haute in order to promote his own business, (LR 56.1(b)(3) ¶ 16), seemingly without regard to the intrusion and inconvenience that such an action foists upon the unwilling recipients. Congress enacted the TCPA to punish and deter such behavior, and with good reason. *Creative Montessori Learning Ctr. v. Ashford Gear*, No. 09 C 3963, 2011 WL 3273078 (N.D. Ill. July 27, 2011), *vacated and remanded sub nom. Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) ("the TCPA's statutory remedy is 'designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf'") (citations omitted). But the Court is also mindful that Defendant never sought out a company to conduct a fax broadcasting campaign. Rather, B2B, and Ms. Abraham and Mr. Wilson in particular, initiated the relationship by cold calling Defendant to solicit him to undertake the campaign. (LR 56.1(a)(3) ¶ 6.) And this was not an isolated incident, not by a long shot. Ms. Abraham, the owner of B2B, has been involved in over fifty lawsuits in which B2B was hired to conduct an illegal fax broadcasting campaign. *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 916-17 (7th Cir. 2011) ("This class action suit is one of more than 50 similar class action suits based on information from Abraham's records concerning firms

that used her faxing services and the recipients of the faxes.").[9] While this lawsuit is not focused on B2B, the facts make clear that B2B targeted Defendant and acted in a manner which led its clients to violate the law and expose themselves to enormous liability. The same behavior inconvenienced thousands, if not millions, of unwilling facsimile and phone call recipients. While the Defendant is clearly responsible for some (if not ultimately all) of the actions of B2B, in light of all the information before the Court, the Court in its discretion determines that Defendant shall not be liable for enhanced damages under the TCPA. 47 U.S.C. § 227(b)(3)(C).

## CONCLUSION

For the reasons stated above, Plaintiff's motion [Doc. No. 103] is granted in part and denied in part. Plaintiff is entitled to summary judgment on the issue of receipt of the facsimile, because the question of whether Plaintiff actually received the facsimile is irrelevant to liability under the TCPA. Plaintiff is entitled to summary judgment on the issue of the content of the facsimile, because no material facts remain under dispute. Plaintiff is entitled to partial summary judgment as to the facsimiles sent within a twenty mile radius of Terra Haute. The Court will hold a status hearing on April 9, 2013 at 10:00 a.m., to discuss the procedure to

---

[9] Ms. Abraham, B2B, and Plaintiff's counsel have also been embroiled in a variety of legal disputes over counsel's conduct in acquiring the facsimile at issue from B2B's hard drive. The Court discussed the issue at length in an earlier order, (Doc. No. 140), as have other courts. *See Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011); *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2012 WL 3961307, at *2 (N.D. Ill. Sept. 10, 2012); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07 C 5456, 2010 WL 2365162, at *6 (N.D. Ill. June 11, 2010).

determine the precise number of transmissions in this category to enable the Court to determine the amount of damages. Material issues of fact exist on the question of whether B2B exceeded its authority in sending facsimiles beyond the twenty mile radius of Terra Haute, however, and with respect to those facsimiles the Court cannot, as a matter of law, grant summary judgment.

**SO ORDERED.**                                   **ENTERED:**

**DATE:** ___March 19, 2013___                   _____

                                                  **HON. MARIA VALDEZ**
                                                  **United States Magistrate Judge**