IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIDGEVIEW HEALTH CARE CENTER LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, </br></br>　　　　　Plaintiff, </br></br>　v. </br></br>JERRY CLARK, d/b/a Affordable Digital Hearing, </br></br>　　　　　Defendant. | No. 09 C 5601 </br></br> Magistrate Judge </br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Reconsider [Doc. No. 166] and Defendant's Motion in Opposition to Entry of Judgment in Favor of Subclass [Doc. No. 164]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, both motions are denied.

## BACKGROUND

Plaintiff filed a class action seeking recovery on behalf of itself and a class of similarly-situated persons as a result of an unsolicited facsimile advertisement that Plaintiff allegedly received. Plaintiff sought recovery for violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), for common law conversion, and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Plaintiff moved for summary judgment, which this

Court granted in part and denied in part. *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013). Most of the relevant facts and allegations were recited in the summary judgment order, *id.* at *1-*2, and need not be repeated here.

Plaintiff now moves for reconsideration on the basis of a Federal Communications Commission ("FCC") declaratory ruling released after this Court issued its summary judgment order. (*See* Pl.'s Mot. at 2 [Doc. No. 166], *citing* In re Dish Network, LLC, et al., __ F.C.C.R. __, FCC 13-54 (May 9, 2013) (hereinafter "*Dish Network*" or "FCC Ruling").) The FCC Ruling addressed three petitions for declaratory rulings on its interpretation of the TCPA and held, in pertinent part, that a seller may be held vicariously liable for violations of section 227(b) of the Act according to federal common law principles of agency. *Dish Network* at 1. This includes situations that extend "beyond classical agency, however," to include liability "in circumstances where a third party has apparent (if not actual) authority." *Id.* at 13. The FCC Ruling found that two federal court decisions that limited vicarious liability under section 227(b) to "classical agency" circumstances were unduly restrictive. *Id.* at 17 n.124, *citing Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) and *Mey v. Pinnacle Security, LLC*, No. 11 C 47, 2012 WL 4009718, at *4-*5 (N.D. W.Va. Sept. 12, 2012) (adding that "[p]rinciples of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b)."). This Court cited both *Thomas* and *Mey* in its summary judgment order and similarly found that vicarious

2

liability under section 227(b) was limited to circumstances of actual authority or ratification. *Bridgeview,* 2013 WL 1154206, at *5 n.5. Plaintiff therefore argues that the FCC Ruling constitutes a change in the law that requires the Court to grant Plaintiff's summary judgment motion in full.

Defendant has also filed a motion. In its previous order, the Court found that summary judgment was proper as to the recipients of the facsimile within a twenty mile radius of Terra Haute, Indiana, because Defendant admitted that he authorized the sending of facsimiles to recipients within that radius. *Id.* at *7. Defendant now moves to oppose the entry of judgment for those recipients, arguing that they must be certified as a subclass and that such a certification is improper in this case.

## DISCUSSION

### I. Whether reconsideration is warranted.

Under Fed. R. Civ. P. 54(b), a court may reconsider its prior interlocutory orders at any time before entering a final judgment. *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012). The discretion to reconsider an order is limited both substantively and procedurally. Substantively, a motion to reconsider is only appropriate "where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011). Procedurally,

3

"reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing." *Wiegel*, 891 F. Supp. 2d at 944 (*citing Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). The instant motion fails at the procedural prong.

The FCC Ruling appears to make a significant change to the law governing liability under the TCPA that would meet the substantive standard for reconsideration. By announcing that the "apparent authority" of an agent may confer vicarious liability on a principal under the TCPA, *see Dish Network* at 13, the FCC Ruling expands the liability that may attach to defendants charged with violations of section 227(b) of the Act. Plaintiff argues that the FCC Ruling is binding on this Court.[1] Defendant does not contest that the FCC Ruling is binding, but simply asserts that the Court's ruling is not a "manifest error of law" even in light of the agency's interpretation of the TCPA. (*See* Def.'s Resp. at 3-4 [Doc. No. 172], *citing City of Livonia Employees' Ret. Sys. v. The Boeing Co.*, No. 09 C 7143, 2011 WL 824604, at *3 (N.D. Ill. Mar. 7, 2011).) Because there is no objection raised by the non-movant, this Court will proceed with the analysis as if the FCC ruling is binding upon this Court.

---

[1] This may well be true under the doctrine of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984), but neither party addressed the question.

**1.     Waiver**

Defendant argues that Plaintiff failed to raise the issue of apparent authority in its summary judgment motion, and therefore waived its right to raise it on reconsideration. *See Wiegel*, 891 F. Supp. 2d at 944. Plaintiff first raised the question of vicarious liability in its reply memorandum to the summary judgment motion, where it argued that "Plaintiff need only show that B2B sent the fax 'on behalf of' Defendant," and stated that the fact that Defendant itself did not send the faxes was "legally irrelevant." [Doc. No. 155 at 6.] This Court, in its summary judgment order, described Plaintiff's position—perhaps too generously—as arguing "that once an agency relationship is established then the TCPA confers strict liability for all of the facsimiles ultimately sent." *Bridgeview*, 2013 WL 1154206, at *5. Indeed, in its reply memorandum on this motion, Plaintiff does not dispute the characterization of its position as arguing that it "was merely required to show that [the alleged agent] sent a facsimile on behalf of Defendant." (Pl.'s Reply at 3 [Doc. No. 174], *quoting* Def.'s Resp. at 5.) This conclusive argument was never justified by any analysis of vicarious liability or apparent authority until this motion to reconsider. As a result, this Court could find Plaintiff waived its opportunity to raise the issue on reconsideration.

**2.     Summary judgment for Plaintiff would be inappropriate even under the legal standard in the new FCC Ruling.**

Assuming Plaintiff has not waived any argument of vicarious liability or apparent authority, even in light of the FCC's recent interpretation of the law, the Court could still not grant summary judgment in full.

To prevail on a TCPA claim, the plaintiff must show that the defendant used a telephone facsimile machine, computer, or other device to send an unsolicited commercial advertisement without the recipient's prior express permission or invitation. 47 U.S.C. § 227(a)-(b). Thus the TCPA creates a form of vicarious liability, making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act. *Bridgeview*, 2013 WL 1154206, at *4, *citing* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995).) And according to the most recent FCC Ruling, vicarious liability under section 227(b) includes circumstances in which the defendant's agent has apparent authority, in addition to actual authority or ratification. *Dish Network* at 13. This Court has previously found that whether Defendant's agent had actual authority and whether Defendant later ratified the agent's actions are genuine issues of material fact. *Bridgeview*, 2013 WL 1154206, at *6-*7. The question now before the Court is whether a genuine issue of material fact also exists as to whether Defendant's agent, B2B, had apparent authority.

6

"Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal." *N. Assur. Co. of Am. v. Summers*, 17 F.3d 956, 962 (7th Cir. 1994), *citing Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164, 1166 (Ind. 1989).[2] The principal must communicate either directly or indirectly with the third party, "which instills a reasonable belief in the mind of the third party" as to the existence of an agency relationship and its scope. *Pepkowski*, 535 N.E.2d at 1166-67. "Statements or

---

[2] Defendant argues that Indiana law should govern the questions of agency in this case, since B2B called Defendant in Indiana and entered into an agreement to advertise Defendant's Indiana-based business. (Def.'s Resp. at 12.) Plaintiff makes no argument regarding the applicable law. The determination of the appropriate law to apply is itself a question of federal law. Because the action arises under a federal statute, federal courts need not fashion federal common law choice-of-law rules unless a significant conflict exists between some federal interest and state law. *See Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.,* No. 06 C 3183, 2007 WL 3231425, at *3 (N.D. Ill. Oct. 30, 2007) (*citing Atherton v. FDIC*, 519 U.S. 213, 218 (1997)). Neither party asserts that such a conflict exists. Therefore, the Court may apply the choice of law rule of the forum state to determine the applicable law. *See id*. Illinois, the forum state, applies the "most significant relationship" test to choice-of-law disputes. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009), *citing Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. 2001); *see also Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970) (adopting Restatement (Second) of Conflict of Laws test of "most significant relationship" for tort claims). The test includes the place where the injury occurred; the place where the conduct occurred; the domicile, nationality, place of incorporation and place of business of the parties; the place where the parties' relationship is centered. *Ingersoll*, 262 N.E.2d at 596. In this case, the injury to Plaintiff occurred in Illinois, but at least two of the remaining three factors all point to Indiana: the place of incorporation and place of business of Defendant is in Indiana, (LR 56.1(b)(3) ¶ 3), and the relationship between B2B and Defendant is centered in Indiana. (LR 56.1(a)(3) ¶ 6.) Therefore, while in a previous order the Court relied on Illinois law (since the parties did not assert any choice-of-law position), the facts of this case indicate that Indiana law is applicable for the purposes of determining the presence and scope of an agency relationship. It is worth noting that Illinois law on the issue of apparent authority is substantially the same as Indiana law. *See, e.g., Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664 (7th Cir. 2004), *citing Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 759 N.E.2d 174, 181 (Ill. App. Ct. 2001) (finding that under Illinois law, an agent's authority may be either actual or apparent, but that "[o]nly the alleged principal's words and conduct, not those of the alleged agent, establish the agent's authority.").

manifestations made by the agent are not sufficient to create an apparent agency relationship." *Id.* at 1167.[3]

In this case, Plaintiff has failed to show that no disputed issue of material fact exists on the question of the agent's *apparent* authority, for largely the same reasons as Plaintiff failed to show that summary judgment was proper on the question of the agent's *actual* authority. *Cf.* RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. c (2006) ("Apparent authority often coincides with actual authority.") Defendant presented evidence that the agent in this case, B2B, was not authorized to send facsimiles on his behalf beyond the twenty mile radius of Terra Haute, Indiana. *Bridgeview*, 2013 WL 1154206, at *6-*7. This disputed factual issue was the basis for this Court's denial of summary judgment as to those recipients of the fax. *Id.* If the finder of fact found Defendant's evidence persuasive on this point, then it would follow that Defendant had made no manifestation, direct or indirect, to those recipients[4]; the unauthorized act of Defendant's agent alone is not a

---

[3] The logic of this rule is perhaps best illustrated by an extreme hypothetical: if the principal authorized the agent to send a single fax advertisement, and the agent proceeded to send one million fax advertisements, holding the principal liable for every fax advertisement on the basis of the actions of the agent *alone* would be manifestly unjust. Requiring *some* action of the principal is a necessary limit on vicarious liability in the apparent agency context.

[4] No one has suggested that Defendant had any other contact or communication with the recipients besides the fax sent by B2B. Furthermore, while Indiana law includes "indirect manifestations" from the principal to the third party to establish apparent agency, such manifestations still involve some affirmative step by the principal that the third party could reasonably rely upon. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 584 (7th Cir. 1994) (finding "no evidence that [the principal] made any representation to the [third party] that might vest [the agent] with apparent authority to bargain on its behalf," and thus finding no agency relationship sufficient to bind the

manifestation sufficient to create an "apparent agency" relationship. *See Pepkowski*, 535 N.E.2d at 1166-67. As a result, Plaintiff has not shown that no genuine issue of material fact exists in regard to actual authority and equally to apparent authority, which bars summary judgment as to the fax recipients outside the twenty mile radius of Terra Haute. *See* Fed. R. Civ. P 56(c).

### 3. Summary judgment for a subset of class members is appropriate and does not require certification of a subclass in this case.

Defendant argues in its Motion in Opposition to Entry of Judgment in Favor of Subclass [Doc. No. 164] that the Court cannot grant summary judgment to the recipients of the fax within a twenty mile radius of Terra Haute without certifying a subclass. Defendant then argues that such a subclass should not be certified both because it fails to meet the numerosity requirements of Fed. R. Civ. P. 23(a) and because Plaintiff is not a member of the subclass, requiring a separate class representative.

"When appropriate, a class may be divided into subclasses" that are each treated as a class and are subject to the same requirements of any class under Fed. R. Civ. P. 23(a). *See* Fed. R. Civ. P. 23(c)(5). Whether such a division is appropriate typically turns on whether the original class has members whose interests are divergent or antagonistic, 7AA CHARLES ALAN WRIGHT ET. AL., FEDERAL PRACTICE &

---

principal under Indiana law). Defendant made no such affirmative step, and thus at most any manifestation by Defendant to the recipients of the fax would have been indirect and entirely via its agent.

9

PROCEDURE § 1790 (3d ed.), which can lead to the conclusion that a single class representative is not "typical" of divergent groups. *See Culver v. City of Milwaukee*, 277 F.3d 908, 911 (7th Cir. 2002) (*citing* Fed. R. Civ. P. 23(a)(3)) (requiring that the class representative's claims or defenses be typical of the class). This is not a heterogenous class, however. The interests of the fax recipients inside the twenty mile radius of Terra Haute and of the recipients outside that radius are neither antagonistic nor divergent: they suffered the same harm (an unsolicited fax advertisement), seek the same monetary relief under the TCPA, and a recovery by one does not conflict with or compromise a recovery by the other. *See Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1346 (9th Cir. 1980) ("a Court overseeing a class suit must constantly be sensitive to conflicts within the class"). Defendant has not demonstrated why a representative from outside that radius is not typical of the class or why that representative is unable to adequately represent the class, nor has he shown any real or potential conflict within the class. The certification of a subclass is not required.

II. **"Within a twenty mile radius of Terra Haute" refers to the radius from the city border, not from a specific street address**.

This Court granted summary judgment "with respect to the facsimiles sent within the twenty mile radius of Terra Haute," *Bridgeview*, 2013 WL 1154206, at *7, and instructed the parties to submit a status report documenting the precise number of recipients within that area. [Doc. No. 157.] The parties agreed on a methodology for mapping the recipients, but disagreed on how to determine the

10

proper boundaries of the area in question. Plaintiff argues that the recipients should include those within twenty miles of the borders of Terra Haute. Defendant contends that the recipients should only be those within twenty miles of Defendant's business address. Plaintiff has the better argument.

Defendant stated that he understood the advertisement would be sent to businesses "within a twenty mile radius of Terra Haute." (LR 56.1(b)(3) ¶ 17.) The plain meaning of "within a twenty mile radius" is twenty miles away from something, in this case a city. And the city is defined by its borders. For instance, it would be bizarre to refer to stores "within a one-mile radius" of Terra Haute and mean to *exclude* stores inside the city limits but more than one mile from the geographic center of downtown; any store located in Terra Haute would be presumed to be included in that category, along with stores outside the city but within one mile of its border. Similarly, the set of recipients that are "within a twenty mile radius of Terra Haute" are those twenty miles or less from the border of Terra Haute, not those within twenty miles of a particular point in the town (such as Defendant's business or the center of town). Thus the Court adopts Plaintiff's proposed approach and includes any recipients within twenty miles of the borders of Terra Haute, which the parties agree is a total of thirty two recipients. (Joint Status Report, ¶ 10 [Doc. No. 161].) Thus Defendant is liable for thirty two violations of the TCPA, for a total of $16,000. 47 U.S.C. § 227(c)(5) (damages of up to $500 per violation).

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Reconsider [Doc. No. 166] is denied and Defendant's Motion in Opposition to Entry of Judgment in Favor of Subclass [Doc. No. 164] is denied. Plaintiff is entitled to partial summary judgment in the amount of $16,000 for the thirty two facsimiles sent within a twenty mile radius of Terra Haute.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:** __August 21, 2013__   _____

**HON. MARIA VALDEZ**
**United States Magistrate Judge**