# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGEVIEW HEALTH CARE CENTER, an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | No. 09 C 5601 |
| | ) | Magistrate Judge |
| Plaintiff, | ) | Maria Valdez |
| | ) | |
| v. | ) | |
| | ) | |
| JERRY CLARK, d/b/a AFFORDABLE DIGITAL HEARING, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the plaintiff class's ("Plaintiffs") Motion to Alter Judgment, [Doc. No. 259], and defendant Jerry Clark's ("Defendant") Motion to Alter or Amend Judgment, to Decertify Class, and to Vacate Money Judgment, [Doc. No. 252]. For the following reasons, the Court denies both Motions.

# BACKGROUND[1]

This case concerns the scope of Defendant's liability for "junk fax" advertisements that were transmitted to Plaintiffs by his independent contractor, Business to Business Solutions ("B2B") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Defendant hired B2B to help advertise his medical equipment repair business, which is located in Terre Haute, Indiana. B2B did just that, but, unknown to Defendant, B2B also sent thousands of fax ads to persons and business far beyond the Terre Haute region. Naturally, many of those faxes were unwelcome, and Plaintiffs thus filed suit under the TCPA, claiming that Defendant is liable for statutory damages per each fax sent, regardless of whether he instructed B2B to send them on his behalf.

On March 19, 2013, the Court granted partial summary judgment to Plaintiffs for both liability and damages. Reasoning that the TCPA and its regulations incorporate principles of vicarious liability and agency, the Court found Defendant liable for 100 faxes sent within a twenty-mile radius of Terre Haute because he explicitly authorized B2B to send those faxes to local businesses. The Court declined to grant summary judgment for the other faxes, though, because it was unclear whether B2B had actual or implied authority to send them. Thus, the case was set to proceed to trial, with the sole issue being the scope of B2B's authority for the faxes sent beyond the twenty-mile Terre Haute area.

---

[1] The parties are intimately familiar with the underlying facts in this case. The Court will therefore summarize only those facts relevant to the instant Motions.

Shortly before trial, however, Plaintiffs filed a motion for reconsideration, which asked the Court to grant summary judgment fully to the class in light of the Federal Communications Commission's ("FCC") (then) recent decision in *DISH Network*, 28 FCC Rcd 6574 (2013). In that decision, the FCC explained that while the TCPA incorporates traditional federal-common-law principles of agency, such as actual and implied authority, it also extends "beyond classical agency" to include liability "in circumstances where a third party has apparent (if not actual) authority." *Id.* at 6586. Accordingly, Plaintiffs claimed that (1) the Court's March 2013 summary judgment ruling was erroneous because it did not analyze whether B2B acted with the less-stringent standard of apparent authority, and that (2) the evidence indisputably established that B2B had such authority. The Court agreed in part: *DISH Network* indeed "change[d] [] the law governing liability under the TCPA" by imputing concepts of apparent authority. (8/21/13 Mem. Op. & Order at 4 [Doc. No. 176].) But disputes of material fact remained regarding B2B's alleged apparent authority, and the Court therefore denied Plaintiffs' motion for reconsideration.

The case then proceeded to a one-day bench trial on January 27, 2014. In the subsequent months, Plaintiffs sought leave to file supplemental authority on four occasions, which the Court granted. Only two of those four are relevant to the instant matter, however:

1. A letter from John Ley of the FCC ("FCC Letter") to the Eleventh Circuit Court of Appeals, which states, in part, that *DISH Network*'s vicarious liability analysis does not apply to the TCPA's junk-fax provisions and that a defendant who hires an independent contractor

3

to send fax ads on her behalf is thus directly liable. (*See* Pl.'s Mot. to Alter Judgment, Ex. 2 [Doc. No. 259].)

2. A case from the District of New Jersey that relied on the FCC Letter and applied a direct liability analysis for junk-fax violations instead of following *DISH Network. See City Select Auto Sales, Inc. v. David Randall Assoc., Inc.*, Civ. A. No. 11-2658, 2014 WL 4755847 (D.N.J. Sept. 24, 2014).

Thereafter, the Court instructed Plaintiffs that no further briefing on the issue would be considered. Nonetheless, they sought leave to file yet another TCPA case from the Eleventh Circuit Court of Appeals, which, in light of the FCC Letter, reversed the lower court's *DISH Network* analysis and clarified that a defendant is directly liable for junk-fax violations, not vicariously liable. *See Palm Beach Golf Center v. Sarris,* 771 F.3d 1274 (2014). But this Court did not consider that ruling because Plaintiffs had been given ample opportunity to supplement their briefing and notions of judicial economy militated in favor of closing the record.

Thus, on November 21, 2014, the Court entered its findings of fact and conclusions of law, and found, in pertinent part, as follows:

- Legally, the Court affirmed its position that the text of the TCPA and its regulations support the interpretation that vicarious liability applies in instances where an individual hires a third party to send fax ads on her behalf.

- Relying on *DISH Network*, the Court further found that vicarious liability under TCPA Section 227(b), 47 U.S.C. § 227(b), applies only where a defendant's agent has actual, implied, or apparent authority, or where the defendant ratifies the third party's conduct.[2]

- Factually, the Court determined that Defendant did not direct or control the means by which B2B sent any of the faxes, but further

---

[2] At the time, the Court was unpersuaded by the FCC Letter, but, as discussed *infra*, the Court's opinion has changed somewhat.

found that he was responsible for the content and approval of the ads that were sent within the twenty-mile radius of Terre Haute.

- Regarding the other faxes, however, Defendant neither ratified nor authorized B2B (expressly or impliedly) to send anything beyond that twenty-mile area. Thus, the only way in which Defendant would be liable for those faxes were if B2B had apparent authority to do so.

- In that respect, the circumstantial evidence submitted by Plaintiffs did not overcome Defendant's (otherwise) uncontroverted testimony that he did not intend, and never told B2B, to do anything besides send the 100 faxes to local business in Terre Haute.

- Particularly, there was no evidence from Defendant's initial communications with B2B (from the first phone call to when the Terre Haute faxes were sent) that he intended B2B to advertise outside of Terre Haute. Similarly, there was insufficient evidence to indicate that Defendant understood B2B's regular business practice, which involved sending faxes *en masse* to persons all over the country. Nor did the evidence suggest that Defendant was ever made aware of exactly how many faxes would be sent and to whom.

- Therefore, the Court declined to find Defendant liable for the faxes sent beyond the twenty-mile Terre Haute area.

(11/21/14 Findings of Fact and Conclusions of Law at 5-16 [Doc. No. 248].) The parties then filed the instant Motions to Alter Judgment.[3]

## **STANDARD OF REVIEW**

Rule 59(e) "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). A motion to alter or amend a judgment pursuant to Rule 59(e) "is permissible when there is newly discovered evidence or there has been a manifest

---

[3] Plaintiffs have also appealed this Court's findings of fact and conclusions of law to the Seventh Circuit, as well as its March 13, 2013 summary judgment order and November 3, 2014 denial of leave to file supplemental authority.

error of law or fact" *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). A

manifest error of law is the "disregard, misapplication, or failure to recognize

controlling precedent." *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir.

2000) (internal quotations omitted). "A 'manifest error' is not demonstrated by the

disappointment of the losing party." *Id.* To succeed on a Rule 59 motion, "the

movant must 'clearly establish' one of the aforementioned grounds for relief."

*Harrington*, 433 F.3d at 546 (quoting *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d

1119, 1122 n.3 (7th Cir. 2001)). Furthermore, motions to reconsider sounding under

Rule 59(e) should only be granted in rare circumstances. *Bank of Waunakee v.

Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

## **DISCUSSION**

Plaintiffs contend that the Court erred by relying on *DISH Network*, ignoring

the Eleventh Circuit's decision in *Sarris*, and, more generally, interpreting the

TCPA's junk-fax provisions as incorporating principles of vicarious liability rather

than direct liability. Defendant, in contrast, contends that the Court should

decertify the class and vacate any money judgment to Plaintiffs because (1)

Bridgeview Healthcare ("Bridgeview"), the named Plaintiff, resides beyond the

twenty-mile Terre Haute area and therefore cannot satisfy Rule 23's adequacy,

commonality, and typicality requirements, and (2) the number of plaintiffs within

the twenty-mile Terre Haute area falls far short of Rule 23's numerosity

requirement. The Court will address each Motion in turn.

# I.     Plaintiffs' Motion and Junk-fax Liability under the TCPA

The gravamen of Plaintiffs' argument is that the Court failed to consider both controlling and persuasive authority that an advertiser is primarily liable for faxes sent by its independent contractor, without recourse to principles of vicarious liability. One such authority is the FCC Letter, and in this small respect, the Court and Plaintiffs agree: it was error to apply *DISH Network* to this case. But this becomes clear only in light of why the Court relied on *DISH Network* in the first instance.

### (a) The TCPA: Pre- and Post-DISH Network

The TCPA prohibits the "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (2006). The statute, however, is silent regarding who qualifies as a "sender" of junk faxes. Recognizing this ambiguity, the FCC issued an order in 1995, clarifying that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements.*" In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 (1995). This definition of "sender" was later codified in 2006 as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. 64.1200(f)(10). But this definition traded one interpretation problem for another,

and the issue became: Exactly what kind of liability is created by the phrase "on whose behalf"?

Before *DISH Network*, courts answered this question differently, and the relationship between agency principles and a defendant's liability for junk-faxes sent on his behalf was thus uncertain. For example, this Court analyzed "sender" liability through agency principles, reasoning that Congress typically legislates with traditional tort principles in mind, and "nothing in the language of [Section] 227(b) indicates that notions of agency law are not applicable." *Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2013 U.S. Dist. LEXIS 37310 at *5 (N.D. Ill. Mar. 19, 2013); *see also Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, 2014 U.S. Dist. LEXIS 27758, 9 (N.D. Ill. Mar. 3, 2014) (adopting this Court's analysis in *Bridgeview*). Other courts in this district, in contrast, reasoned that the FCC's regulatory definition of "sender" requires a direct liability analysis. *See, e.g., Glen Ellyn Pharm. v. Promius Pharma, LLC*, 2009 U.S. Dist. LEXIS 83073, at *11 (N.D. Ill. Sept. 11, 2009); *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, 2011 U.S. Dist. LEXIS 6460, at *3 (N.D. Ill. Jan. 21, 2011). And still another court took a third route and analyzed both direct and vicarious liability. *See Addison Automatics, Inc. v. RTC Grp., Inc.*, No. 12 C 9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013). But all this changed with *DISH Network*.

In that decision, the FCC held that in the context of telemarketing calls, a "seller" may be held vicariously liable for calls made by third parties on the seller's behalf. Particularly, the FCC explained that interpreting the phrase "on whose

behalf" (as it appears in Section 227(b)'s telemarketing provisions) as incorporating federal common-law principles of agency is consistent with Congressional intent and administrative precedent. *DISH Network*, 28 FCC Rcd at 6589. And thus, the confusion that had surrounded "on whose behalf" liability was dispelled (albeit temporarily), and courts consequently relied on *DISH Network* and the similarities between the TCPA's telemarketing and junk-fax provisions[4] to inform their analysis of junk-fax cases.[5] *See, e.g., Savanna Grp., Inc. v. Trynex, Inc.,* No. 10 C 7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2013)*; Smith v. State Farm Mut. Auto. Ins. Co.,* No. 13 C 2018, 2013 WL 5346430, at *4 (N.D. Ill. Sept. 23, 2013); *Imhoff Inv., LLC v. SamMichaels, Inc.,* No. 10–10996, 2014 WL 172234, at *6 (E.D. Mich. Jan. 15, 2014) ("Even though the FCC's declaratory ruling addressed the definition of seller within the telemarketing context, not sender within the faxing context, the definitions are similar and the ruling has been applied to senders as well.") According to the FCC, however, this was a mistake.

*(b) The FCC Letter*

Roughly a year after the *DISH Network* ruling, the Eleventh Circuit requested the FCC's position the very issue this Court now faces: the principles

---

[4] *Compare* 47 C.F.R. § 64.1200(f)(9) ("The term seller means the person or entity <u>on whose behalf</u> a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.") (emphasis added), *with* 47 C.F.R. § 64.1200(f)(10) ("The term sender for purposes of paragraph (a)(4) of this section means the person or entity <u>on whose behalf</u> a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.") (emphasis added).

[5] Ironically, it was Plaintiffs who first alerted this Court to the *DISH Network* ruling and further argued that it applies to junk-fax cases.

governing a defendant's liability for fax ads sent by a third party. In its response, the FCC clarified that "the DISH Network ruling applies only to liability for telemarketing calls and neither addresses nor alters the Commission's pre-existing regulatory treatment of unsolicited facsimile advertisements." FCC Letter at 3. That standard, the letter explained, is embodied in the definition of "sender" as stated in the FCC's 1995 order: "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *Id.* (quoting 10 FCC Rcd. at 12407). This means, according to the FCC, that "senders" of junk faxes are directly liable, and that principles of vicarious liability are irrelevant.

Although the FCC Letter is not binding, *see U.S. v. Mead Corp.*, 533 U.S. 218, 236 (2001), the Court agrees with its analysis: the language used by Congress and the FCC differs with respect to liability under the TCPA's telemarketing and junk-fax provisions, and consequently the FCC's interpretation with respect to one need not apply to the other. For example, the TCPA's telemarketing provisions prohibit "sellers" from initiating certain calls made to any residential line without the prior consent of the called party. 47 U.S.C. § 227(b)(1)(B). In identifying the "initiator" of such calls, the regulations distinguish between "telemarketers" and "sellers," whereby the "telemarketer" is defined as the person that "initiates" a call, and the "seller" is defined as the person "on whose behalf" a call is made. 47 C.F.R. § 64.1200(c)(2). Thus, the FCC's conclusion in *DISH Network* that "a seller does not generally 'initiate' calls made through a third-party telemarketer within the

meaning of the TCPA," and may "be held [only] vicariously liable under federal common law principles of agency for violations . . . that are committed by third-party telemarketers," *DISH Network*, 28 FCC Rcd. at 6574, is a product of the defined relationship between "sellers" and "telemarketers." There is no similar relationship within the TCPA's definition of "sender" in the junk-fax context. Rather, "sender" is simply defined as "the person or entity on whose behalf a [fax ad] is sent." 47 C.F.R. § 64.1200(f)(10). As such, the Court's reliance on *DISH Network* in the junk-fax context was misplaced.[6]

### (c) Post-FCC Letter and Defendant's Liability

In light of the FCC Letter, the cases cited by Plaintiffs, and pre-*DISH Network* precedent in this district, the Court also agrees that recourse to principles of vicarious liability is unnecessary in the junk-fax context because the FCC's definition of "sender" implies direct liability.[7] But beyond this suggestion, the distinction between direct and vicarious liability is of little help, and the issue

---

[6] This conclusion is further supported by the Eleventh Circuit's well-reasoned decision in *Sarris*, 771 F.3d at 1284-88.

[7] Particularly, the Court now finds that applying a heightened standard of agency liability to the junk-fax context does not square entirely with the FCC's 1995 Order and 47 C.F.R. § 64.1200(f)(10), which are binding on this Court pursuant to the Administrative Orders Review Act, 28 U.S.C. § 2342(1). *See CE Design, Ltd. v. Prism Business Media, Inc.,* 606 F.3d 443, 446 (7th Cir. 2010). Although Defendant points out that neither the 1995 Order nor subsequent codification of "sender" explicitly mentions "direct liability," those definitions make clear that the offending conduct lies with the person "on whose behalf" fax ads are transmitted, not with the entity who transmits the fax. Conceptually, then, there is no need to ascribe liability vicariously to a "sender" by virtue of a third party's conduct. And therefore it matters not that the phrase "direct liability" is absent from the FCC's definition. The contrary cases cited by Defendant are, moreover, of no import: most of them do not discuss the precise issue at hand, and none of them appears to have considered the relationship between the FCC's orders/regulations and the Administrative Orders Review Act.

remains: What standards govern direct liability in this context? Neither the FCC

nor the Seventh Circuit has squarely addressed this question, and therefore the

Court must give meaning to "sender" liability under the TCPA's junk-fax provisions.

Naturally, the best place to start is the text of the FCC's orders and

regulations. Unfortunately, however, the 1995 Order provides limited insight:

> Some petitioners request clarification of whether responsibility for compliance with the ban on unsolicited facsimile advertising and with the facsimile identification requirement lies with the entity or entities on whose behalf such messages are sent or with service providers ("fax broadcasters"). . . .

> We clarify that the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule.

10 FCC Rcd at 12407. The text of the regulation is similarly unhelpful:

> The term *sender* for purposes of paragraph (a)(4) of this section means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.

47 C.F.R. § 64.1200(f)(10). Thus, while we may know *who* is liable, and that liability

is direct, two principal ambiguities remain: (1) the meaning of "on whose behalf"

(that is, under what circumstances can the transmission of a fax ad be said to be "on

behalf of" a defendant?); and (2) whether the disjunction formed by the term "or"[8]

creates two distinct kinds of liability, whereby a defendant may be liable because a

fax ad is sent "on her behalf" — *or* — simply because an unsolicited fax promoting

her goods or services is transmitted.

---

[8] "The term sender . . . means the person or entity on whose behalf a facsimile unsolicited advertisement is sent **or** whose goods or services are advertised." 47 C.F.R § 64.1200(f)(10) (emphasis added).

In the latter case, it would appear that a defendant is strictly, directly, and *per se* liable for all faxes sent by a third party, and at least two federal district courts in Illinois, in the motion to dismiss context, appear to have allowed allegations to stand asserting liability on the basis that the defendant was a sender because an unsolicited fax promoting that defendant's goods or services was transmitted. *See Addison Automatics, Inc.,* 2013 WL 3771423, at *4 ("Since [defendants'] goods or services are advertised in the fax at issue, they are "senders" under the FCC's interpretation of this section of the TCPA."); *Sturdy v. Medtrak Educ. Servs. LLC,* Case No. 13-CV-3550, 2014 U.S. Dist. LEXIS 81311, at *6 (C.D. Ill. June 16, 2014). And that may very well be a basis for liability. But it is not the complete picture.

As explained by a 2006 FCC Order:

> We take this opportunity to emphasize that under the Commissioner's interpretation of the facsimile advertising rules, the sender is the person or entity on whose behalf the advertisement is sent. In most instances, this will be the entity whose product or service is advertised or promoted in the message.

*In the Matter of Rules & Regulations,* 21 FCC Rcd 3787, 3808 (2006). This binding order[9] implies that a necessary condition to being a "sender" is that a fax ad is sent on one's behalf, but that, *in some instances*, an entity whose product or service is advertised will not be deemed a "sender" and would therefore not be liable. Thus, although the FCC Letter, which cites *Addison*, might plausibly be interpreted as supporting strict, *per se* liability, the FCC's 2006 Order is inconsistent with that approach and carries more weight.

---

[9] *See* 28 U.S.C. § 2342(1).

13

Further, and more fundamentally, a rule of strict liability would lead to absurd results. To conclude that a defendant is always liable for faxes advertising her goods or services would allow an overzealous third party to expose a defendant to substantial liability without notice or without receiving any direction to do so. This sort of universal liability does not appear to have been contemplated by Congress either. *See* H.R. Rep. No. 317, 102d Cong., 1st Sess. 25 (1991) (explaining that the purpose of the TCPA's junk-fax provisions is to ensure that the cost of advertising, viz., printer paper and ink, is not shifted to an unwilling consumer). This indicates that Congress sought to penalize persons who *advertise* their goods via junk faxes. But the very notion of advertising one's goods entails that one must do something to advertise them. A rule of strict liability, however, would go much further and penalize people for simply having goods that are "advertised" in a fax (perhaps unwillingly, by third parties), rather than penalize only those who take steps to advertise their goods unfairly by shifting the cost of advertising to the recipient.

Plaintiffs disagree, and further claim that *Sarris* supports a strict approach. Under Plaintiffs' theory, if they can show that Defendant's solicitation was transmitted to them, then the inquiry should end, and no triable issue exists. But this line of thinking is not supported by the *Sarris* opinion. Although the *Sarris* court found that demonstrating vicarious liability through common law agency is unnecessary in the junk-fax context, *see* 771 F.3d at 1285-87, its holding fell far short of imposing strict liability on the "sender," *see id.* at 1287-88. Indeed, the

Eleventh Circuit clearly held that factual questions — "the question of on whose behalf the fax advertisement was sent" — needed to be decided before liability could be established. *Id.*

Accordingly, even if the Court were to rely solely on Plaintiffs' cited authority, they could not dispense with the burden of proving that the faxes at issue were sent on behalf of Defendant. And now we are back at square one: What facts must be shown to demonstrate that junk faxes were sent on a defendant's behalf? The FCC itself does not appear to endorse a rule of strict liability because, as explained the 2006 Order above, a person whose goods or services are advertised in an unsolicited fax will not always be a "sender." It follows that a factual analysis is contemplated. But where does that leave the inquiry? How would a trial court instruct the jury in this regard?

On the one hand, it is clear that strict liability goes too far. On the other hand, we know that agency principles of vicarious liability cannot be the exclusive method of proof. But although the FCC Letter speaks against relying on principles of vicarious liability, it is axiomatic that doing something "on someone's behalf" involves some sort of derivative or surrogate relationship. The Court is thus left to conclude that the phrase "on whose behalf" requires a standard assessing a variety of factors surrounding a defendant's role in providing direction to a third party.

In this respect, *Sarris* is particularly instructive. There, the Eleventh Circuit identified two, nonexclusive, factors for the jury to weigh in determining a defendant's liability: (1) the extent and nature of control the defendant had over the

third-party engaged in marketing on his behalf; and (2) whether the defendant approved the final draft of the fax marketing plan. *See id.* at 1288. As a result, this Court concludes that an appropriate standard requires a totality-of-circumstances review, which incorporates the *Sarris* factors and other considerations including, but not limited to: the defendant's degree of input and control over the content of the faxes, the actual content of the faxes, contractual or expressly stated limitations in the scope of control between the parties, the defendant's approval of the final draft of the faxes and their recipients, and the defendant's overall awareness of the circumstances.[10]

In light of these considerations, the Court again finds that the at-issue faxes were not sent on Defendant's behalf. The pertinent facts remain undisturbed: Defendant wanted to advertise his business within Terre Haute; he contracted with B2B for that very purpose; he approved the design and content of 100 ads; and he knew exactly what B2B was going to do with them. Defendant did not, however, direct B2B to send faxes beyond Terre Haute, and he had no reason to think that B2B would do so. There is thus no sense in which the faxes sent beyond Terre Haute were sent on his behalf. Therefore, the Court's prior judgment on this issue stands (albeit for slightly different reasons), and Plaintiffs' Motion is denied.

---

[10] This reasoning is in line with both pre-*DISH Network* precedent in this district and post-FCC Letter cases in other districts that have considered this precise issue. *See, e.g., Glen Ellyn Pharm.,* 2009 U.S. Dist. LEXIS 83073 at *11; *Green* 2011 U.S. Dist. LEXIS 6460 at *3; *Sarris,* 771 F.3d at 1284; *City Select Auto Sales, Inc.* 2014 WL 4755847 at *8.

## II.  **Defendant's Motion and the Maintainability of the Class**

Defendant offers two distinct bases for decertifying the class, one pursuant to Rule 23, which provides that class certification may be altered or amended before a final judgment, and the other pursuant to Rule 59, which allows courts to alter or amend manifest errors of law. *See* Fed. R. Civ. P. 23(c), 59(e). Nonetheless, the substance of Defendant's argument is the same under both routes. Given the Court's conclusions regarding the scope of his liability, Defendant claims: (1) he is not liable to Bridgeview because it resides outside the twenty-mile Terre Haute radius, and therefore Bridgeview fails Rule 23's typicality and commonality requirements (and by extension, its adequacy requirement); and (2) the "actual" class (those within Terre Haute) is too small to satisfy Rule 23's "numerosity" requirement. Neither argument succeeds.

*(a) Defendant's Motion and Rule 23*

Construed under Rule 23, Defendant's motion fails for the simple reason that "the text of Rule 23(c)(1) . . . clearly does not invite amendments to class certification orders after judgment." *Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975). It is of no consequence that, as Defendant notes, Plaintiff's motion for attorney's fees is still pending because the time frame for "alter[ing] or amend[ing certification is] before the decision on the merits." Fed. R. Civ. P. 23 advisory committee's note. Here, the relevant facts and law were decided in this Court's

findings of fact and conclusions of law, a final judgment was reached on the merits, and therefore Defendant's attempt to decertify the class pursuant to Rule 23 fails.[11]

*(b) Defendant's Motion and Rule 59*

Defendant's Motion fares no better under Rule 59, primarily because there is nothing left to reconsider: this case was litigated to its end as a class action, and properly so. The cases cited by Defendant to support post-judgment decertification are unpersuasive. Most of them are not from the Seventh Circuit, and, moreover, they are all distinguishable. *See, e.g., Davis v. Ball Memorial Hospital Ass'n,* 753 F.2d 1410, 1416 (7th Cir. 1986) (affirming the district court's dismissal of a class action two days before trial because the class claims were mooted); *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (affirming trial court's decertification of class after trial where no class members responded to class notice and plaintiff's claim was barred by statute of limitations); *Stastny v. Southern Bell Telephone and Telegraph Co.*, 628 F.2d 267, 276 (reversing a district court's decision not to decertify after a judgment on the merits because the failure of the class claims became clear *during* trial).

Nonetheless, for the sake of thoroughness, the Court will briefly address Defendant's substantive arguments. The standards for class certification are familiar. Rule 23 provides that a plaintiff may bring his claim on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

[11] Of course, there are exceptional circumstances that may ground a post-judgment motion to decertify a class, *see Jiminez*, 523 F.2d at 697, but they do not exist here.

plaintiff are typical of the claims or defenses of the class; and (4) the plaintiff will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Additionally, the court must find that (1) the prosecution of separate actions by individual class members would create inconsistent adjudications or impair the ability of other members to protect their interests, (2) the opposing party has acted or refused to act on grounds generally applicable to the class, or (3) common questions of law or fact predominate. Fed. R. Civ. P. 23(b).

In that regard, Defendant's challenges to Bridgeview's typicality, commonality, and adequacy are easily dismissed. True, a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met, but it need not decertify whenever it later appears that the named plaintiffs were not class members or were otherwise inappropriate class representatives. Rather, as the Supreme Court has stated, "provided the initial certification was proper . . . the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims." *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 406 n.12 (1977). If this case were still proceeding before this Court, the proper procedure would be simply to substitute a new named plaintiff. *See* 13A Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3533.9, at 420-21 (3d ed. 2006). But this case is finished (at least here), and, moreover, Plaintiffs have appealed the Court's judgment regarding Defendant's liability, which sustains Bridgeview's claims as possibly common and

typical to the class, as well as its ability to represent the class adequately. *See Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 332 (1980); *Muro v. Target Corp.*, 580 F.3d 485, 489 (7th Cir. 2009).

Defendant's contentions regarding numerosity are equally baseless. To determine that numerosity exists, courts look at the individual circumstances of a case and can make common-sense assumptions about the practicability of joinder versus a class action. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). Here, Defendant cites a litany of cases outside of this Circuit where courts have decertified classes for containing less than forty members. But number alone is not dispositive of this issue, *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988), and there exists ample authority in this district for maintaining class actions with far fewer members. *See, e.g., McCabe v. Crawford & Co.* 210 F.R.D. 631, 644 (N.D.Ill. 2002); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986).

Ultimately, courts have broad discretion concerning class certification, *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980), and pursuant to that discretion, the Court declines to reconsider its decision to certify the class. Decertifying the class at this stage would be an absurd waste of everyone's time and judicial resources, and it would not ultimately affect Defendant's liability. Accordingly, Defendant's Motion is denied.

## <u>CONCLUSION</u>

For the reasons stated above, the Court denies Plaintiffs' Motion to Alter Judgment, [Doc. No. 259], and Defendant's Motion to Alter or Amend Judgment, to Decertify Class, and to Vacate Money Judgment, [Doc. No. 252].

**SO ORDERED.**                    **ENTERED:**

**DATE:  <u>April 8, 2015</u>**              _____
                                   **HON. MARIA VALDEZ**
                                   **United States Magistrate Judge**