IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGEVIEW HEALTH CARE CENTER, LTD., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | No. 09 C 5601 |
| Plaintiff, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | |
| JERRYCLARK d/b/a AFFORDABLE DIGITAL HEARING | ) ) ) ) ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Bridgeview Health Care Center's ("Bridgeview" or "Plaintiff") Motion for an Award of Attorney's Fees and Related Non-taxable Expenses Pursuant to Fed. R. Civ. P. 54(d)(2)(D) and Local Rule 54.3, [Doc. No. 268]. Defendant Jerry Clark ("Defendant") opposes the Motion. For the following reasons, the Court grants in part and denies in part Plaintiff's Motion.

## BACKGROUND

After five years of litigating this TCPA class action, Class Counsel won a judgment of $16,000 for the class, and they now seek one-third of the common fund in attorney's fees ($5,333) as well as $307.26 in costs.[1] Defendant, however, claims that Plaintiff's motion should be denied in its entirety because (1) Class Counsel did

---

[1] Class Counsel reached this number by multiplying their total alleged costs ($45,553.88) by the percentage of the class that received recovery (.0066%).

not achieve a "meaningful result," which is required by the fee agreement between Bridgeview and its counsel, (2) Class Counsel's bill of costs is so poorly drafted that it is impossible to discern which, if any, costs were necessary or reasonable, and (3) many of the requested costs are unrecoverable as a matter of law. The Court will address each issue in turn.

## **DISCUSSION**

### I.     Attorney's Fees

In a certified class action, courts "may award reasonable attorney's fees that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). To determine whether the requested fees[2] are reasonable, courts should compare them to the approximate market rate for similar legal services. *See In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("Synthroid I") (endorsing the market-mimicking approach); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorney's fee is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible."). To that end, the Seventh Circuit has suggested several factors to inform the market-rate analysis:

> (1) the existence of any *ex ante* agreement between the parties;
> (2) fees awarded in other common fund cases;
> (4) the complexity, length, and expense of the case;

---

[2] Here, Class Counsel has suggested, and the Court adopts, the "percentage of the fund" approach for calculating fees. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("We therefore reiterate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.").

2

   (4) the risk a firm agrees to bear; and
   (5) the quality of its performance

*Synthroid I,* 264 F.3d at 718-21; *Isby v. Bayh,* 75 F.3d 1191, 1198-99 (7th Cir. 1996).

  With respect to the first factor, it is well-settled that *ex ante* agreements between the parties are useful indicators of the market rate. *See Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (noting that *ex ante* agreements better approximate the prevailing market rate between willing sellers and willing buyers of legal services). Here, like many class actions, there is the retainer between the named plaintiff (Bridgeview) and its counsel. But that agreement is hardly probative of the market rate because named plaintiffs are often less-sophisticated buyers of legal services and do not have "a sufficient stake to drive a hard—or any—bargain with the lawyer[s]." *Continental*, 962 F.2d at 572. The agreement therefore fails to capture what an *ex ante* negotiation with the entire class would have yielded, had such a negotiation occurred. Accordingly, there is only a slight presumption that Bridgeview's fee agreement reflects the reasonable market rate for Class Counsel's services.[3]

---

[3] By extension, Defendant's contentions with the language of the fee agreement deserve little discussion. Above all, Defendant's argument fails because he misreads the fee agreement: it states that "[a]ttorneys will be paid only if a **successful** result is achieved" — *not* "only if a meaningful result is achieved." (Fee Agreement [Doc. No. 280, Ex. 1] at 1) (emphasis added). Here, Class Counsel indeed achieved "a successful result" when they secured a $16,000 benefit for the class on summary judgment, and, by the terms of the fee agreement, they deserve to get paid for it. Moreover, Defendant's semantic argument is undercut by the successive terms of the agreement, which states that "[i]n a class action, attorneys feels will be determined or approved by the court . . . . Client understands and agrees that Attorneys will seek an attorneys fee award equal to one-third of any benefit conferred upon the class, and Client expressly agrees not to opposed Attorneys' request." (*Id.*) Thus, any ambiguity surrounding what constitutes a "successful result" is obviated by the more-specific clause concerning recovery in class actions.

That said, the other *Synthroid* factors militate in favor of Class Counsel's requested fees. Above all, the one-third contingency fee is well within the normal range in common fund cases of this size. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572 (explaining that in class actions "the usual range for contingent fees is between 33 and 50 percent")[4]; *see also Saf-T-Gard Int'l., Inc., v. Seiko Corp. of Am.,* No. 09 C 0776 (N.D. Ill. Jan 14, 2011) (awarding one-third of the common fund in a multimillion dollar TCPA class action). The complexity, length, and expense of the case only underscore this point: Class Counsel have rigorously litigated this case for over five years, navigating the contours of the class certification process, and taking it all the way through trial. To be sure, TCPA litigation is hardly rocket science, but there were certain novel issues in this case that turned on nuanced interpretations of the TCPA and its regulations, which required skilled, in-depth briefing from the parties. These considerations strongly support Class Counsel's requested fees.

The risk factor, in contrast, cuts both ways. On one hand, Class Counsel hardly went out on a limb by taking this case, since (1) the bulk of consumer data was gathered from another lawsuit (related to the oft-cited culprit of TCPA violations, Business 2 Business Solutions), and (2) the TCPA is a strict liability statute that prescribes statutory damages. But class actions are nonetheless inherently risky, and Class Counsel accepted the case on a contingency basis. Taken

---

[4] The Seventh Circuit also noted that this range might give way to sliding-scale fee structure in large commercial litigation with multimillion dollar common funds. *Synthroid I*, 264 F.3d at 721. But those concerns do not apply since the common fund in this case is only $16,000.

together, the risk borne by Class Counsel neither strongly supports nor detracts from the reasonableness of their requested fees.

And lastly, there is Class Counsel's performance. Defendant argues that it has been necessarily poor because the benefit to the class, relative to its size, is rather small: only 32 out of 4,849 class members received relief. The Court disagrees. Although this case was decided (largely) in Defendant's favor, the result at trial cannot be the sole metric by which a lawyer's performance is judged.[5] What matters is the quality of representation throughout the case. In that respect, Class Counsel successfully navigated the contours of class certification, won on summary judgment early in the proceedings, and litigated the case for five years. Simply put, Class Counsel did well enough to justify the $5,333 in fees they now seek, and the Court will give it to them.[6]

## II. Costs

In addition to one-third of the common fund, Class Counsel also seek $307.26 in costs and expenses, which are typically awarded to the prevailing party. *See* Fed. R. Civ. P. 54(d). Importantly, recoverable costs are limited to (1) fees of the clerk, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies of papers

---

[5] It is worth noting that Class Counsel's "loss" at trial was rather narrow. The Court's decision turned on numerous, unsettled questions of law that were not resolved until after trial. The fact that Class Counsel came out on the wrong side of that decision is hardly their fault.

[6] The Court emphasizes that its analysis on this Motion is tailored to the relatively small size of the common fund. And although neither party raised this issue, the Court further finds that based on the information provided by the parties, Class Counsel's requested fees are also consistent with the principles set forth in *Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).

necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court appointed experts and interpreters. 28 U.S.C. § 1920. Moreover, recovery is not automatic; counsel must submit a bill of costs "with the level of detail that paying clients [would] find satisfactory" so that a court can assess whether they are reasonable or necessary. *Synthroid I*, 264 F.3d at 722; *Acosta v. Target Corp.*, No. 05 C 7068, 2014 WL 1560447 at *1 (N.D. Ill. Apr. 18, 2014). Here, Class Counsel's request for costs fails on both fronts.

As a whole, the bill of costs is so hopelessly undetailed that the Court cannot assess whether any of the costs are reasonable. For example, there are over one-hundred "photocopying" entries without any explanation of what was photocopied or why. The Court is therefore unable to differentiate between copies used solely for attorney convenience and those used in the case. *See Alexander v. CIT Tech. Fin. Svcs., Inc.*, 222 F. Supp. 2d 1087, 1089 (N.D. Ill. 2002) (explaining that copies made for attorney convenience are not recoverable costs). Similarly, Class Counsel lists a significant number of charges for Westlaw and Pacer, but without any description of what was researched and for what purpose. Indeed, the only documentation submitted to support any of the costs is a list of transactions by date, with labels such as "travel expenses" and "messenger delivery," and a dollar amount on the right hand margin. This hardly reflects the level of specificity that a reasonable client would find acceptable.

Worse still, many of the costs sought by Class Counsel are unrecoverable: the filing fees for their appeal to the Seventh Circuit; undocumented attorney travel

expenses; sanctions imposed for Class Counsel's delay in submitting an expert rebuttal report; postage; and costs incurred in a <u>*different*</u> case. *See* 28 U.S.C. § 1920. Perhaps the only item that stands a snowball's chance is expert fees, but even there Class Counsel runs into difficulty. Of the three experts listed, one opinion was stricken by the Court because it had not been disclosed to Defendant and was otherwise unhelpful. [*See* Doc. No. 140 at 8.] And for the others, it is impossible to determine the basis of their fees, much less whether they are reasonable or necessary. Had Class Counsel explained, at the least, who each expert is and the work contributed to the case, perhaps they might be entitled to recovery. But Class Counsel did not, and therefore the Court denies their request for costs in its entirety. *See SP Techs., LLC v. Garmin Int'l, Inc.*, No. 08 CV 3248, 2014 U.S. Dist. LEXIS 3441, *29 (N.D. Ill. Jan. 10, 2014) (denying insufficiently documented expert fees); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600 (N.D. Ill. 2011) (dismissing, *sua sponte*, class counsel's request for costs and expenses because counsel had "provided insufficient itemization and back-up documentation of the expenses so to allow the Court to make a meaningful assessment").

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Plaintiff's Motion for an Award of Attorney's Fees and Related Non-taxable Expenses Pursuant to Fed. R. Civ. P. 54(d)(2)(D) and Local Rule 54.3, [Doc. No. 268]. Class Counsel is hereby entitled to an award of $5,333 in attorney's fees, but no costs or expenses.

**SO ORDERED.**                  **ENTERED:**

**DATE:**    **July 23, 2015**           _____
                                                       **HON. MARIA VALDEZ**
                                                       **United States Magistrate Judge**